**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**LAM MUK CHIU,
Defendant-Appellant.**

**No. 1177, Docket 75–1101.**

United States Court of Appeals,
Second Circuit.

Submitted July 14, 1975.

Decided Aug. 15, 1975.

Heitner & Rosenfeld, Brooklyn, N. Y., for defendant-appellant.

David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Paul B. Bergman and Charles Clayman, Asst. U. S. Attys., of counsel), for plaintiff-appellee.

Before MOORE, FRIENDLY and VAN GRAAFEILAND, Circuit Judges.

PER CURIAM:

The appellant Lam Muk Chiu was tried before a jury and convicted of conspiracy to import heroin[1] and on six counts of importation of heroin into the United States.[2] He appeals from the judgment of conviction entered on this verdict.

While in New York in February 1974, Lam met Harry Yip, a confidential government informant. Yip purchased one ounce of heroin from Lam and two others, and at several meetings Yip and Lam discussed future heroin importation. Lam returned to Hong Kong on February 16, 1974, and from there spoke with Yip on the telephone and corresponded with him frequently. Introduced into evidence at trial were tape recordings of fourteen telephone conversations between Lam and Yip, ten letters addressed to Yip bearing Lam's signature, and six parcels containing heroin that had been mailed from Hong Kong to New York.

Lam returned to New York on August 9, 1974. Yip met him at Kennedy Airport, and they proceeded to a hotel room. Yip introduced Lam to Agent Maher, then posing as the brother of a heroin purchaser procured by Yip. A deal was negotiated for the importation of fifty more pounds of heroin. Shortly thereafter, Lam was arrested by agents who entered the room after receiving a prearranged signal from Maher. The agents conducted a search of Lam's person and his attache case. Several items uncovered during the search were introduced into evidence, including an address book containing Yip's address and that of his father that had been seized from inside the attache case.

On appeal, the appellant asserts as error the refusal of the trial court to admit into evidence three proffered samples of his handwriting. These samples

had been prepared by the appellant following his arraignment at the direction of his attorney for use at trial. Appellant sought to introduce them for comparison to the handwriting contained in the letters that Yip had received from Hong Kong. These letters had been introduced by the government without any direct proof of authentication in the form of expert handwriting testimony or signature identification (Yip testified that he was unable to identify Lam's signature apart from the letters). It was the government's position that the letters were authenticated by content, 7 J. Wigmore, Evidence § 2148 (3d Ed. 1940), in that they represented an agreed follow-up to the February 1974 meetings between Lam and Yip. The district court admitted the letters on this basis, while at the same time permitting the defendant to assert his contention that the letter was not written by him. Since the appellant did not object to this procedure, we need not pass on the validity of the government's position.[3]

The district court excluded the three handwriting samples on the ground that they were objectionable as self-serving exemplars prepared specially for trial. We find that this ruling was proper.

In *Hickory v. United States,* 151 U.S. 303, 14 S.Ct. 334, 38 L.Ed. 170 (1894) the Supreme Court upheld the exclusion of a paper which the defendant testified he had written in court on the same day that it was sought to be introduced. The purpose of the offer was to show that the defendant's handwriting differed from that contained in two documents already in evidence and allegedly written by the defendant. The Supreme Court observed that:

"[A]s remarked in *King v. Donahue,* 110 Mass. 155, 156, 'a signature made

---

1. 21 U.S.C. §§ 841(a)(1), 846, 952(a).

2. 21 U.S.C. §§ 841(a)(1), 952(a).

3. Nor on appeal does the appellant contend that the letters should not have been admitted. He argues only that the government's evidence as a whole was insufficient to support a conviction and cites in support of this position,

among other things, the government's failure to adduce expert handwriting testimony. This contention is frivolous. The circumstances under which the letters were admitted made the authorship of the letters a question for the jury and the overall evidence of guilt was overwhelming.

for the occasion *post litem motam* and for use at the trial ought not to be taken as a standard of genuineness.' 'It would,' as was said in *Williams v. State*, 61 Ala. 33, 40, 83, 'open too wide a door for fraud, if a witness was allowed to corroborate his own testimony by a preparation of specimens of his writing for purposes of comparison.' "

*Id.* at 306–07, 14 S.Ct. at 335. Unquestionably, a defendant has a strong motive to alter his writing so as to render it dissimilar to an incriminating document alleged by the prosecution to be in his hand. Accordingly, any handwriting sample prepared for the specific purpose of showing dissimilarity of handwriting is inherently suspect and should not be admitted into evidence. *See* J. Baker, Law of Disputed and Forged Documents, 84 (1955).

The appellant relies on *Citizens' Bank & Trust Co. v. Allen*, 43 F.2d 549 (4th Cir. 1930), a case involving a promissory note bearing the signature of one of the defendants, the genuineness of which was disputed. At the direction of the court, the defendant wrote her signature several times for the purpose of comparison with the signature on the note in question. This writing took place under the direct observation of the court and counsel and was repeated again before the jury. In holding that these signatures were admissible over the objection of the plaintiff bank, the Court of Appeals emphasized the distinction between a writing prepared secretly, out of sight of those interested in observing the method of preparation, and an in-court writing done a number of times and without prior warning. Furthermore, the district judge, who had himself requested the procedure and observed it firsthand, had expressly found that the "circumstances surrounding the two experiments were such that the risk of deception was practically nonexistent." 43 F.2d at 551. It is plain that the writings in this case bear none of the same assurances of reliability as did the signatures in *Allen*, and the appellant's reliance on

that case is therefore misplaced. Had the appellant wished to compare the handwriting in the letters to a neutral sample of his handwriting, there were documents available which might have served the purpose, such as his certificate of identity book containing his signature, several arrest cards, or his registration card at the hotel. However, the appellant chose not to adopt this procedure.

■ The appellant also argues that the search of his attache case and the seizure of his address book at the time of his arrest transcended the bounds set by *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), for searches incident to arrest. However, one of the arresting officers testified that when the agents burst into the hotel room, the door pushed the appellant back to a point where he was standing right next to the attache case. The same agent indicated that the appellant then made a move toward the attache case. Thus, at the time of arrest, the attache case was clearly within the "immediate control" of the arrestee as that term was defined by the Supreme Court in *Chimel* ("the area within which [the arrestee] might gain possession of a weapon or destructible evidence"). *Id.* at 763, 89 S.Ct. at 2040. Furthermore, this court has previously upheld the warrantless search incident to arrest of a brief case in the possession of an accused at the time of arrest even after the accused and his effects had been removed from the scene. *United States ex rel. Muhammad v. Mancusi*, 432 F.2d 1046 (2d Cir. 1970), *cert. denied*, 402 U.S. 911, 91 S.Ct. 1391, 28 L.Ed.2d 653 (1971). See also *United States v. Frick*, 490 F.2d 666 (5th Cir. 1973), *cert. denied sub nom. Petersen v. United States*, 419 U.S. 831, 95 S.Ct. 53, 42 L.Ed.2d 57 (1974); *United States v. Mehciz*, 437 F.2d 145 (9th Cir.), *cert. denied*, 402 U.S. 974, 91 S.Ct. 1663, 29 L.Ed.2d 139 (1971). Accordingly, the search of the attache case violated no constitutional right of the appellant.

For the foregoing reasons, the judgment of the district court is affirmed.