466 S.E.2d 471

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Elizabeth Ladybird JENKINS, Defendant Below, Appellant.**

No. 22722.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 26, 1995.

Decided Dec. 11, 1995.

**622**

Robert J. O'Brien, Buckhannon, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Dawn E. Warfield, Deputy Attorney General, Charleston, for Appellee.

McHUGH, Chief Justice:

The appellant, Elizabeth Ladybird Jenkins, appeals the October 14, 1994 order of the Circuit Court of Lewis County which sentenced her to one to ten years in the West Virginia Penitentiary after she was convicted by a jury of uttering a forged check in violation of *W.Va.Code*, 61–4–5 [1961].[1] For reasons stated below, we reverse the appellant's conviction and grant her a new trial.

### I.

At trial a store clerk from the Giant Eagle, a grocery store in Weston, testified that the appellant signed a check with the name Emerson Herrod and presented it to her for the goods the appellant was purchasing in the grocery store. Subsequently, the check was returned to the grocery store because it was a forged check. The store clerk identified

the appellant in the courtroom as being the person who presented the check signed with Emerson Herrod's name. The store clerk stated that she remembered that the appellant had presented the check because the appellant had a black eye on the day she was in the grocery store.

A police officer testified that the store clerk picked the appellant's photograph out of a photographic line-up as being the person who uttered the forged check. The police officer further testified that the driver's license number which the store clerk wrote down on the check for identification purposes was not the appellant's nor Emerson Herrod's license number. Additionally, the description on the driver's license did not match the store clerk's description of the person who uttered the check. The police officer also stated that he had the appellant make a writing sample; however, he could not recall whether the handwriting on the uttered check matched the appellant's handwriting.[2]

Emerson Herrod, who is the appellant's stepfather, testified that the signature on the check was not his. Furthermore, he stated that the account upon which the check had been drawn was closed.

Another witness, William Lee Adkins, testified that in the past he had signed Emerson Herrod's name on Mr. Herrod's checks. Mr. Adkins' sister, Betty Adkins, whom the store clerk identified in a photographic line-up as being with the appellant when she uttered the check, testified that she and the appellant found Emerson Herrod's checkbook in her brother William's room. Betty Adkins stated that she had confronted her brother about whether he was forging checks. Additionally, Ms. Adkins admitted that she was on house arrest for writing bad checks during the time the appellant allegedly presented

---

1. *W.Va.Code*, 61–4–5 [1961] states, in relevant part:
   If any person forge any writing ... to the prejudice of another's right, or utter or attempt to employ as true such forged writing, knowing it to be forged, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than

ten years, or, in the discretion of the court, be confined in jail not more than one year and be fined not exceeding five hundred dollars.

2. The handwriting sample which the police officer had the appellant make was not introduced into evidence at the trial.

the forged check to the Giant Eagle grocery store.

The appellant testified that she had never been in the Giant Eagle grocery store in Weston. Therefore, she maintains she could not have uttered the forged check in question.

## II.

The issue before us is whether the trial judge erred by refusing to allow the jury to examine a handwriting sample prepared by the appellant in court for comparison with the check which the appellant was accused of signing.

This issue arose when the appellant was testifying. Her attorney handed her a sheet of paper and asked her to write the name "Emerson Herrod" several times along with the following sentence: "In the tree is a giant eagle with six feathers." The appellant's counsel moved to have this sheet of paper admitted into evidence. The trial judge refused stating that the members of the jury were not handwriting experts. Additionally, the trial judge stated that he questioned the competency and relevancy of the writing sample because individuals "who are involved in forgery ... usually try to disguise their signatures."

The State argues that there is no need to determine the admissibility of the handwriting sample because whether or not the appellant signed the check is not an element of the crime of uttering. The State relies on syllabus point 1 of *State v. Nichols*, 177 W.Va. 483, 354 S.E.2d 415 (1987) in which this Court held:

> To sustain a conviction under *W.Va. Code*, 61-4-5 [1961] [which makes uttering a crime], the prosecution must prove four elements: (1) the writing uttered was forged; (2) the accused uttered or attempted to employ as true the forged writing; (3) the accused knew the writing to be forged; and (4) the writing itself was of

such a nature as to prejudice the legal rights of another.

We agree with the State's contention that whether or not the appellant signed the check is not an element of the crime of uttering.

However, the appellant argues that she is not offering the writing sample to prove that the check was not uttered. Instead, the appellant maintains that she is offering the writing sample to prove that the store clerk wrongfully identified her as being the person who uttered the forged check. The store clerk testified that the appellant signed the check in her presence and handed it to her to pay for the goods. The appellant maintains that she was never in the Giant Eagle. Therefore, the appellant concludes that the writing sample is necessary to support her only defense.

We find the appellant's contention to be persuasive. Thus, did the trial judge err when he excluded the handwriting sample? We conclude that the trial judge violated the appellant's due process rights under the Fourteenth Amendment of the *Constitution of the United States* and her right to a fair trial pursuant to article III, § 14. of the *Constitution of West Virginia* by excluding the appellant's handwriting sample. Although we decide the case on a constitutional basis, we deem it appropriate to address the authentication requirement set forth in *W.Va.R.Evid.* 901.

### A.

*W.Va.R.Evid.* 901(a) states: **"Requirement of Authentication or Identification.** (a) *General Provision.*—The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."[3] (footnote added).

We are mindful that the authentication requirement existed prior to the adoption of

---

**3.** *W.Va.R.Evid.* 901 is identical to *Fed.R.Evid.* 901. Thus, we will examine commentary and cases involving the federal counterpart to *W.Va. R.Evid.* 901 in order to resolve the issue before us. *See State v. McGinnis*, 193 W.Va. 147, 158 n.

14, 455 S.E.2d 516, 527 n. 14 (1994) and *Wilt v. Buracker*, 191 W.Va. 39, 43, 443 S.E.2d 196, 200 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2137, 128 L.Ed.2d 867 (1994).

the *West Virginia Rules of Evidence,*[4] and "stems from a healthy common law skepticism that courts should not blindly assume that an offered piece of evidence is what it appears to be or what the proponent claims it is." 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 9–1(A) at 300 (3d ed. 1994). Indeed, "[t]he rules relating to authentication and identification speak to three related concerns: preventing fraud upon the court; preventing innocent mistakes; and guarding against 'jury credulity,' the natural tendency to take matters at face value." *Id. See also* 5 Jack B. Weinstein et al., *Weinstein's Evidence* ¶ 901(a)[02] at 901–26 (1995).

The requirement of authentication is a special aspect of relevancy: " 'an inherent logical necessity' 7 Wigmore § 2129, p. 564." 28 U.S.C.Fed.R.Evid. 901 (Notes of Advisory Committee on Proposed Rules). "This requirement of showing authenticity or identity falls in the category of relevancy dependent upon fulfillment of a condition of fact and is governed by the procedure set forth in Rule 104(b)." *Id. See also* 2 Cleckley, *supra* at p. 301. *W.Va.R.Evid.* 104(b) states: *"Relevancy conditioned on Fact.*—When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

"The condition of fact which must be fulfilled by every offer of real proof is whether the evidence is what its proponent claims." 5 Weinstein, *supra* at ¶ 901(a)[01] at 901–15 (footnote omitted). For example, in the case before us, the condition of fact which must be proven is that the handwriting sample was prepared by the appellant.

This does not mean, however, that a showing of authenticity requires a "showing of the truth of the assertions contained in a writing or recording. (E.g., a letter may be authenticated as having been written by a certain party, but its assertions may be flagrant and intentional falsehood.)" 2 Cleckley, *supra* at § 9–1(A) at 301. As one commentator has artfully explained: "Rule 901(a) is intended to simplify and liberalize the authentication process. Thus, once the party offering the evidence makes a *prima facie* case, the question of authenticity is for the fact finder[.]" 2 Cleckley, *supra* at 302. *See also United States v. Logan,* 949 F.2d 1370, 1377 (5th Cir.1991), *cert. denied,* 504 U.S. 925, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992) and *Siegal v. American Honda Motor Co., Inc.,* 921 F.2d 15, 16 n. 2 (1st Cir.1990) (A proponent "must make a prima facie showing of authenticity sufficient to enable 'a reasonable juror [to] find in favor of authenticity.' " (citation omitted)). *W.Va.R.Evid.* 901 simply requires a trial judge to find that a reasonable juror could find that the evidence is what its proponent claims. 5 *Weinstein, supra* at ¶ 901(a)[01] at 901–19. Once the trial judge makes this determination, the rest is up to the trier of fact.

This analysis does not ignore the purpose behind the authentication requirement; rather the analysis recognizes the function of the trier of fact:

This rule does not ignore or repudiate the policy justifications for the authentication requirement. It simply recognizes that where the question is one of probative force or credibility—as it necessarily always is with questions of authenticity and identity—the jury is as competent as the court. The jury is constituted expressly for the purpose of applying common sense and community mores to disputed issues of fact where the principal question is almost always one of credibility.

5 *Weinstein, supra* at ¶ 901(a)[02] at 901–27. *Accord* 2 Cleckley, *supra* at § 9–1(A) at 301. *See also United States v. Clifford,* 704 F.2d 86, 90 (3d Cir.1983). Additionally, we point out that this Court will not disturb a trial judge's ruling on authenticity unless there has been an abuse of discretion. 2 Cleckley, *supra* at § 9–1(A) at 303; *Logan, supra; United States v. Price,* 788 F.2d 234, 237 (4th Cir.1986), *cert. granted and vacated on other grounds by McMahan v. United States,* 483 U.S. 1015, 107 S.Ct. 3254, 97 L.Ed.2d 754 (1987).

---

4. The *W.Va.R.Evid.* were adopted on December 18, 1984 to be effective on February 1, 1985.

*W.Va.Code Court Rules, W.Va.R.Evid.* at editor's note at 277 (1995).

A trial judge's finding of authenticity does not guarantee admissibility. The trial judge also must evaluate whether the evidence is admissible pursuant to the rules of evidence governing relevancy, hearsay, privileges, or any other applicable rules of evidence. 2 Cleckley, *supra* at § 9–1(A) at 303. *Cf.* 5 Weinstein, *supra* at ¶ 901(a)[01] at 901–23.

■■■ Accordingly, we hold that preliminary questions of authentication and identification pursuant to *W.Va.R.Evid.* 901 are treated as matters of conditional relevance, and, thus, are governed by the procedure set forth in *W.Va.R.Evid.* 104(b). In an analysis under *W.Va.R.Evid.* 901 a trial judge must find that the party offering the evidence has made a *prima facie* showing that there is sufficient evidence "to support a finding that the matter in question is what its proponent claims." In other words, the trial judge is required only to find that a reasonable juror could find in favor of authenticity or identification before the evidence is admitted. The trier of fact determines whether the evidence is credible. Furthermore, a trial judge's ruling on authenticity will not be disturbed on appeal unless there has been an abuse of discretion. Lastly, a finding of authenticity does not guarantee that the evidence is admissible because the evidence must also be admissible under any other rule of evidence which is applicable.[5]

In the case before us, the trial judge and parties have misapplied *W.Va.R.Evid.* 901.

The trial judge refused to admit the appellant's handwriting sample because the members of the jury were not handwriting experts. However, *W.Va.R.Evid.* 901(b)(3) explicitly provides that a trier of fact may make comparisons between handwriting samples for the purpose of authentication:

> (b) *Illustration.*—By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
> . . . .
>
> (3) Comparison by Trier or Expert Witness.—Comparison by the trier of fact or by expert witnesses with specimens which have been authenticated.

Clearly, the trial judge abused his discretion by ruling that the jury could not compare the appellant's handwriting sample with the forged signature on the bad check.

Furthermore, as we previously stated, the trial judge also found that the appellant's handwriting sample should be excluded because individuals "who are involved in forgery ... usually try to disguise their signatures." In support of the trial judge's ruling, the State points out that courts have excluded writing samples which are prepared in court or for the trial as being self-serving and unreliable. Specifically, the State cites to *United States v. Lam Muk Chiu,* 522 F.2d 330 (2d Cir.1975). In *Lam Muk Chiu* the defendant prepared writing samples outside

---

5. We acknowledge that the legislature has addressed the admission of a handwriting analysis in *W.Va.Code,* 57–2–1 [1981]:

> In any civil or criminal action or proceeding, any writing proved to the satisfaction of the judge of a court of record in an in-camera hearing to be in the handwriting of the person who is alleged to have written it, whether or not made in the ordinary course of business, may, if the court further finds that its probative value outweighs its prejudicial effect, be admitted into evidence for the purpose of making a comparison with a disputed writing on the issue of whether or not the disputed writing is genuine. The authenticity of each writing shall be finally determined by the trier of fact.

However, we have made clear that "[t]he West Virginia Rules of Evidence remain the paramount authority in determining the admissibility of evidence in circuit courts. These rules constitute more than a mere refinement of common law evidentiary rules, they are a comprehensive reformulation of them." Syl. pt. 7, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994). *See also Mayhorn v. Logan Medical Foundation,* 193 W.Va. 42, 49, 454 S.E.2d 87, 94 (1994). Moreover, this Court has complete authority to determine how the *West Virginia Rules of Evidence* shall be construed pursuant to its constitutional rule-making authority. *See W.Va. Const.* art. VIII, § 3 (which states, in relevant part, that the Supreme Court of Appeals of West Virginia "shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all of the courts of the State relating to writs, warrants, process practice and procedure, which shall have the force and effect of law."). *See also Mayhorn,* 193 W.Va. at 49, 454 S.E.2d at 94; *Teter v. Old Colony Co.,* 190 W.Va. 711, 724–26, 441 S.E.2d 728, 741–42 (1994) and syl. pt. 1, *Bennett v. Warner,* 179 W.Va. 742, 372 S.E.2d 920 (1988). Therefore, *W.Va.Code,* 57–2–1 [1981] does not affect our analysis of *W.Va. R.Evid.* 901.

of court and sought to have the writing samples introduced in order to prove that the letters introduced by the government were not written by him. The district court excluded the handwriting samples on the ground that they were "self-serving exemplars prepared specially for trial." *Id.* at 331. The United States Court of Appeals of the Second Circuit agreed:

> Unquestionably, a defendant has a strong motive to alter his writing so as to render it dissimilar to an incriminating document alleged by the prosecution to be in his hand. Accordingly, any handwriting sample prepared for the specific purpose of showing dissimilarity of handwriting is inherently suspect and should not be admitted into evidence.

*Id.* at 332.

We decline to apply the above reasoning of the Second Circuit to the facts before us. As we indicated above, *W.Va.R.Evid.* 901 simply requires that there be sufficient evidence "to support a finding that the matter in question is what its proponent claims." Whether or not the evidence is credible is for the trier of fact to determine. *Cf. United States v. Sumpter,* 133 F.R.D. 580, 583 (D.Neb.1990) (In a discussion on whether the admission of "contrived" handwriting samples offends due process, the district court stated: "Any argument that the handwriting sample is so contrived and abnormal as to make identification speculative, inconclusive, or untrustworthy should be made to the jury and would go to the weight and credibility of the expert's testimony, not to its admissibility.") In other words, if a reasonable juror could find in favor of authenticity, then a handwriting sample prepared specially for trial is admissible pursuant to *W.Va.R.Evid.* 901. The

weight and credibility of the handwriting sample is more appropriately challenged through cross-examination.

■ In the case before us, the appellant's handwriting sample is what she claims it is: her attempt to prove to the jury that she could not have been in the Giant Eagle to utter the forged check because she did not sign the forged check as the store clerk testified. Moreover, the handwriting sample was clearly made by the appellant in court in front of the jury. There is no dispute as to whose writing is on the handwriting sample. Whether the appellant's handwriting sample is credible is a question not for the trial judge, but for the jury. Thus, the trial judge abused his discretion by not finding the appellant's handwriting sample to be admissible pursuant to *W.Va.R.Evid.* 901.

### B.

We recognize that once the handwriting sample has been found to be authentic pursuant to *W.Va.R.Evid.* 901, the appellant's handwriting sample must be admissible pursuant to the other rules of evidence. However, as we will explain more fully below, a trial judge cannot apply the rules of evidence in such a mechanistic manner so as to exclude evidence which is critical to the defense without violating the due process clause found in *U.S. Const.* amend. XIV, § 1 or the right to a fair trial found in *W.Va. Const.* art. III, § 14.[6]

Clearly, under *W.Va.R.Evid.* 401 and 402 the handwriting sample is relevant to the appellant's defense that she was not in the Giant Eagle and therefore, could not have signed the forged check.[7] The only other

---

6. *U.S. Const.* amend. XIV, § 1 states, in relevant part, that no State shall "deprive any person of life, liberty, or property, without due process of law[.]"

> *W.Va. Const.* art. III, § 14 states:
> Trials of crimes, and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offence was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county. In all such trials, the accused shall be fully and plainly informed of the character and cause of the

accusation, and be confronted with the witness against him, and shall have the assistance of counsel, and a reasonable time to prepare for his defence; and there shall be awarded to him compulsory process for obtaining witnesses in his favor.

7. *W.Va.R.Evid.* 401 states: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *W.Va.R.Evid.* 402 states: "All relevant evidence is admissible, except as otherwise pro-

rule of evidence which could possibly exclude appellant's handwriting sample would be *W.Va.R.Evid.* 403 which states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Thus, the important question in the case before us is whether the trial judge could properly exclude appellant's handwriting sample pursuant to *W.Va.R.Evid.* 403 when the handwriting sample was critical to her defense.[8]

As this Court has previously acknowledged, "a state may not impose arbitrary limits on the admissibility of evidence which would hamper the fact-finding process, without violating the [*Constitution of the United States* ]." *State v. Beck,* 167 W.Va. 830, 840, 286 S.E.2d 234, 241 (1981). The leading case discussing the constitutional impact of excluding critical evidence is *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).

In *Chambers* the defendant, who denied killing a police officer, sought to prove that a man named McDonald actually committed the crime. Though McDonald had originally confessed to committing the crime, he later recanted his confession. In support of his defense the defendant wished to cross-examine McDonald; however, he was prevented from doing so by the state of Mississippi's voucher rule. The defendant then sought to examine three witnesses who would testify that McDonald made statements to each of them separately which strongly indicated that he committed the crime. However, the trial court precluded the defendant from presenting testimony by the three witnesses on the grounds that such testimony violated Mississippi's hearsay rule. Mississippi's rules of evidence recognized a statement

against pecuniary interest as an exception to the hearsay rule, but did not recognize a statement against penal interest as being an exception to the hearsay rule.[9] *Id.*

The Supreme Court of the United States concluded that the exclusion of the three witnesses' testimony regarding statements by McDonald coupled with the State's refusal to permit the defendant to cross-examine McDonald was reversible error:

> The testimony rejected by the trial court here bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to [the defendant's] defense. In these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.
>
> We conclude that the exclusion of this critical evidence, coupled with the State's refusal to permit [the defendant] to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process.

*Id.* at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 313. We note, however, that the Supreme Court of the United States limited its ruling to the facts and circumstances of that case. *Id.*

The Supreme Court of the United States reached a similar result in a later case. In *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) the defendant, after being convicted for murder, sought to introduce testimony from a witness during the sentencing phase which indicated that although the defendant was with the co-defendant when the victim was abducted and raped, the co-defendant had said that the defendant was not present when the co-defendant killed the victim. The trial court excluded the witness' testimony as inadmissi-

---

vided by the Constitution of the United States, by the Constitution of the State of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible."

**8.** The trial judge, in the case before us, did not explicitly state which rule of evidence he was

relying upon when excluding appellant's handwriting sample.

**9.** We note that *W.Va.R.Evid.* 804(b)(3) does recognize a statement against penal interest as being an exception to the hearsay rule.

ble hearsay. The Supreme Court of the United States reversed the trial court's exclusion of the testimony holding that "[r]egardless of whether the proffered testimony comes within Georgia's hearsay rule, under the facts of this case its exclusion constituted a violation of the Due Process Clause of the Fourteenth Amendment." *Id.* at 97, 99 S.Ct. at 2151, 60 L.Ed.2d at 741.

Likewise, in *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), the Supreme Court of the United States found that "an evidentiary ruling ... deprived [the defendant] of his fundamental constitutional right to a fair opportunity to present a defense." *Id.* at 687, 106 S.Ct. at 2145, 90 L.Ed.2d at 643 (citation omitted). In *Crane* the defendant moved to suppress his confession. The trial judge, upon finding the defendant's confession to be voluntary, denied the defendant's motion. Thereafter, the defendant sought to introduce testimony at trial regarding the physical and psychological environment in which the confession was obtained. The trial judge excluded the testimony after determining that the testimony pertained only to whether the confession was voluntary.

The Supreme Court of the United States pointed out the following when reversing the trial judge's decision to exclude the evidence regarding the environment in which the defendant made his confession:

> Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, ... or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, ... the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' ... We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard.... That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence.

*Id.* at 690, 106 S.Ct. at 2146–47, 90 L.Ed.2d at 645. (citations omitted).

■ The Supreme Court of the United States has made clear in the above series of opinions that there are certain rights which are essential for a fair trial:

> A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel.

*In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507–8, 92 L.Ed. 682, 694 (1948) (footnote omitted). We acknowledge that this Court accords trial judges wide latitude in their evidentiary rulings: " ' " '[R]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596, 599 (1983)." Syllabus Point 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983).' Syllabus point 7, *State v. Miller*, 175 W.Va. 616, 336 S.E.2d 910 (1985)." Syl. pt. 10, *Board of Education v. Zando, Martin & Milstead, Inc.*, 182 W.Va. 597, 390 S.E.2d 796 (1990). However, if a trial judge's evidentiary ruling deprives a defendant of one of the above minimal constitutional rights, such as the right to examine witnesses against him or her, to offer testimony in support of his or her defense, and to be represented by counsel, then clearly the trial judge abuses his discretion in making such a ruling.

■ Accordingly, we hold that while ordinarily rulings on the admissibility of evidence are largely within the trial judge's sound discretion, a trial judge may not make an evidentiary ruling which deprives a criminal defendant of certain rights, such as the right to examine witnesses against him or her, to offer testimony in support of his or her defense, and to be represented by counsel, which are essential for a fair trial pursuant to the due process clause found in the Fourteenth Amendment of the *Constitution of the United States* and article III, § 14 of the *West Virginia Constitution*.

■ In the case before us, we conclude that the trial judge abused his discretion

when excluding the appellant's handwriting sample. The exclusion, in effect, deprived the appellant of making a meaningful defense. The appellant's only defense was that she had never been in the Giant Eagle; therefore, she could not have uttered the check in question. The handwriting sample was critical evidence which the appellant offered to support her defense. Thus, *W.Va. R.Evid.* 403 should not be applied in such a mechanistic manner so as to prevent the appellant from being heard. We recognize the State's concerns regarding the credibility of the appellant's handwriting sample; however, the State would be able to fully explore its concerns by cross-examination of the appellant.[10] The trial judge's exclusion of the handwriting samples in the case before us violates the due process clause found in the Fourteenth Amendment of the *Constitution of the United States* and the right to a fair trial found in article III, § 14 of the *West Virginia Constitution.*

### C.

Lastly, we must determine whether the exclusion of appellant's handwriting sample was harmless error. We recently explained the harmless error analysis in *State v. Kelley,* 192 W.Va. 124, 451 S.E.2d 425 (1994). We acknowledged in *Kelley* that the Supreme Court of the United States set forth the federal standard for a constitutional harmless error analysis in *Fahy v. Connecticut,* 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). The court in *Fahy* analyzed whether an error was harmless by asking "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* at 86–7, 84 S.Ct. at 230, 11 L.Ed.2d at 173.

In 1967 the Supreme Court of the United States reexamined *Fahy* in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Chapman,* the Supreme Court of the United States noted that "its rule and not the state's rule is controlling when constitutional errors are raised." *Id.* The court went on to add that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710–11. This Court adopted the above standard in syllabus point 20 of *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974): "Errors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction."

This Court applied the above principles in *Kelley, supra.* In *Kelley* a sheriff, who served as a bailiff at the defendant's trial, also testified as a key witness for the prosecution in that same trial. This Court held that

[a] defendant's constitutional rights to due process and trial by a fair and impartial jury, pursuant to amendment VI and amendment XIV, section 1 of the *United States Constitution* and article III, sections 10 and 14 of the *West Virginia Constitution* are violated when a sheriff, in a defendant's trial, serves as bailiff and testifies as a key witness for the State in that trial.

Syl. pt. 3, *Kelley, supra.* Moreover, this Court concluded that there is a reasonable possibility that the constitutional violation contributed to the conviction of the defen-

---

**10.** The results may have been different had the appellant moved to admit her handwriting samples without testifying. The United States Court of Appeals of the Seventh Circuit acknowledged that *Chambers, supra,* and *Green, supra,* held "that states must permit defendants to introduce reliable third-party confessions when direct evidence is unavailable." *Gacy v. Welborn,* 994 F.2d 305, 316 (7th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 269, 126 L.Ed.2d 220. However, the Seventh Circuit stated the following when it declined to apply *Chambers, supra,* or *Green, supra,* in the case before it:

No court has extended [*Chambers* and *Green* ] to require a state to admit defendants' *own* out of court words. A defendant is available to himself as a witness. Nothing in the Constitution gives an accused the privilege of proffering, through hearsay, his self-serving statements while denying the state access to the rest of the story that could be got at by cross-examination.

*Id.* (emphasis provided). The case before us is distinguishable from *Gacy* in that the State could cross-examine the appellant.

dant; thus, the error was not harmless. *Kelley*, 192 W.Va. at 130, 451 S.E.2d at 431.

Likewise, in the case before us, we cannot say that the error was harmless. Clearly, there is a reasonable possibility that the exclusion of appellant's handwriting sample contributed to her conviction.

### III.

Based on the above, we reverse the appellant's conviction and remand this case to the Circuit Court of Lewis County for a new trial.

Reversed and remanded.

ALBRIGHT, J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.