# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 17-0588** (Berkeley County 17-F-58)

**Alexander Hicks,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Alexander Hicks, by counsel Ben J. Crawley-Woods, appeals the Circuit Court of Berkeley County's May 30, 2017, order sentencing him to an effective term of incarceration of six to thirty years following his conviction for multiple counts of child abuse resulting in bodily injury. The State of West Virginia, by counsel Gordon L. Mowen, II, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in refusing to permit a defense witness to testify regarding an investigation into a third party, refusing to permit petitioner to testify as to why he believed someone else could have committed the crimes in question, and denying his motion for judgment of acquittal.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2015, petitioner was indicted on three felony counts of child abuse resulting in bodily injury. In February of 2017, a superseding indictment against petitioner charged him with eight felony counts of child abuse resulting in injury. These charges were related to incidents involving two children, B.M., who was four years old at the time of the crimes, and P.M., who was two years old at the time of the crimes.[1] Specifically, the indictment alleged that on at least two occasions in December of 2014, petitioner abused the children by striking or biting them on various areas of their bodies, including their faces, heads, and ears.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

Petitioner, who was dating the children's mother at the time, would care for the children when their mother was at work.

At trial, it was established that on or about December 6, 2014, the children's father noticed bruising on B.M.'s buttocks after he spent the weekend at petitioner's home. After the child's school contacted Child Protective Services ("CPS"), the Berkeley County Sheriff's Department eventually initiated an investigation. During an interview with petitioner and the children's mother, petitioner informed the investigating detective that B.M.'s bruising was caused when the child fell repeatedly during a shower. At that time, the detective chose to end the investigation, although the same was reopened upon later receipt of information of subsequent abuse to the children.

The children's father testified that they spent Christmas of 2014 with him and, aside from a small bruise on B.M.'s leg, they exhibited no injuries or bruising at that time. In fact, pictures of the children from Christmas Day were admitted into evidence at trial to illustrate their condition. On December 26, 2014, the children were taken to petitioner's home, where he assumed custody of them while the mother was at work. A state trooper later informed the father that the children were taken to a hospital and that B.M.'s face was so bruised that his eyes were almost swollen shut and P.M. suffered serious physical injuries.

The children's mother testified that she and petitioner lived together for approximately two years. Additional testimony established that a number of other individuals lived in the home with petitioner and the mother. The mother further testified that petitioner would watch the children when she was at work. Having spent time with the children on Christmas Day, the mother corroborated the fact that they did not have any injuries at that time. According to the mother, she was at work when the children were brought back to her home the day after Christmas, so petitioner provided their care. When she eventually got home from work, the children were already asleep. The mother checked on the children when she got home and noticed a bruise on B.M.'s face. According to the mother, the bruising worsened over the next few days, at which point she noticed that B.M. "had . . . bruises all over him[,]" in addition to the bruising to his face. She also noticed bruising to P.M. and took both children to the hospital on December 30, 2014. According to the mother, petitioner later told her that B.M. had some bruises on his groin when he was dropped off, but he did not indicate that the child had bruises on his face.

The jury also heard testimony from Betty Fisher, an expert in forensic nursing, who evaluated the children at the hospital on December 30, 2014. According to Ms. Fisher, both children had "a lot of bruising." Specifically, B.M. exhibited bruising to both sides of his face, his jaw, his shoulder, and his ear. According to Ms. Fisher, the nature of the bruising indicated that it was the result of non-accidental trauma and was consistent with blunt force trauma from "multiple strikes" amounting to more than "four or five blows." Moreover, Ms. Fisher explained that the bruising to the child's ear was a "red flag for child abuse[,]" given how difficult it is to bruise that area. Ms. Fisher also testified that the bruising to P.M.'s face and abdomen was the result of non-accidental trauma. Moreover, Ms. Fisher testified that the mother's explanation that the injuries appeared overnight is referred to as "magical injuries[,]" an explanation common for concealing non-accidental injuries. Based on the coloring of the children's bruises, Ms. Fisher

testified that they likely occurred around the same time. Further testimony established that neither child was interviewed because neither were verbal; B.M. due to his autism and P.M. due to her age.

Additionally, other family members who saw the children at the relevant time testified that the children did not exhibit injuries, other than minor bruising on an ankle or leg, on Christmas Day when they arrived at the home.

Following the State's case-in-chief, petitioner moved for judgment of acquittal and argued that the State's circumstantial evidence was insufficient to support a conviction. The circuit court denied the motion. Thereafter, the circuit court held a sidebar to address the testimony of Constance Hooe, a witness petitioner wished to call to establish the criminal record of the mother's sister's boyfriend (hereinafter referred to as "the acquaintance"). According to petitioner, this acquaintance had prior criminal convictions for acts similar to the abuse the children suffered herein, including charges of domestic violence that involved biting an individual's face and abusing children. Moreover, petitioner argued that the acquaintance was dating petitioner's sister, who also lived in the home with the children. The circuit court had earlier held petitioner's motion on this evidence in abeyance. However, upon petitioner's admission that he had no evidence placing the acquaintance in the home when the abuse was alleged to have occurred, the circuit court excluded the testimony as too speculative. Petitioner then called several witnesses who either lived in the home or visited frequently to provide testimony in support of his defense.

Petitioner then took the stand and testified that he did not know who perpetrated the abuse, but indicated that he suspected the children's father. He also indicated that at least some of the children's bruising occurred before they were left in his custody on December 26, 2014, although he later testified that he believed the children were injured after their return to the residence when he was absent. Despite his assertions that the father perpetrated the abuse, petitioner further indicated that he had "a list" of "people in mind" that could have abused the children. This list included the mother and the acquaintance. However, petitioner admitted that he was not certain that the acquaintance was present in the home during the applicable time period.

Ultimately, the jury convicted petitioner on six counts of child abuse resulting in bodily injury related to the injuries sustained on or about December 26, 2014, and acquitted him of the remaining two counts, one of which was related to the injuries from December 6, 2014, and one of which was related to the injuries from December 26, 2014. Following the trial, petitioner filed a motion for judgment of acquittal or, alternatively, a new trial. In support, petitioner argued that the State's circumstantial evidence was insufficient to support his conviction. He further argued that his constitutional right to present a defense was violated by the circuit court's refusal to allow him to introduce evidence of the acquaintance's prior convictions. The circuit court denied this motion.

In May of 2017, the circuit court sentenced petitioner to six terms of incarceration of one to five years each and ordered the sentences to be served consecutively. The circuit court also ordered petitioner to register on the abuse and neglect registry for a period of ten years and

submit to thirty years of supervised release. It is from the circuit court's sentencing order that petitioner appeals.

On appeal, petitioner first argues that the circuit court erred in refusing to permit Ms. Hooe to testify about her investigation into the acquaintance, an individual petitioner alleges is a potentially culpable third party. According to petitioner, the investigation of the acquaintance revealed prior arrests for child abuse against two children and assault against an adult, who the acquaintance bit. Petitioner further argues that this acquaintance dated the mother's sister, an individual who lived in the home at the time of the crimes. As such, he argues that it was error to deny Ms. Hooe the ability to testify to her investigation. Upon our review, we find no error.

"'A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.' Syl. pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998)." *State v. Trail*, 236 W.Va. 167, 179, 778 S.E.2d 616, 628 (2015). Moreover, this Court has specifically addressed the admissibility of evidence related to third-party perpetrators and held as follows:

> In a criminal case, the admissibility of testimony implicating another person as having committed the crime hinges on a determination of whether the testimony tends to directly link such person to the crime, or whether it is instead purely speculative. Consequently, where the testimony is merely that another person had a motive or opportunity or prior record of criminal behavior, the inference is too slight to be probative, and the evidence is therefore inadmissible. Where, on the other hand, the testimony provides a direct link to someone other than the defendant, its exclusion constitutes reversible error.

Syl. Pt. 1, *State v. Harman*, 165 W.Va. 494, 270 S.E.2d 146 (1980).

According to petitioner, he met "any burden required by *Harman*" by virtue of the evidence he intended to introduce, as set forth above. We do not agree. Importantly, petitioner fails to acknowledge that he could not provide any evidence that established that the acquaintance had access to the children during the relevant time period. As the circuit court found in its order denying petitioner's motion for judgment of acquittal, at the sidebar to address the admissibility of the evidence in question, petitioner's counsel "did not, nor apparently could he, proffer which witness was going to directly link [the acquaintance] to the child abuse at issue in this case." Specifically, the circuit court noted that petitioner could "point to no evidence which demonstrate[d] that [the acquaintance] was present at the household during the time when the children were present." On appeal, petitioner argues that he could not have known if the acquaintance was at the home when he was not present. However, this argument is entirely without merit, as petitioner's personal knowledge was unnecessary to establish the necessary direct link required by *Harman*. Such evidence could have been provided by any number of individuals who were present in the home, or even the acquaintance himself. The record demonstrates, however, that petitioner did not question the mother's sister, who was dating the acquaintance, as to whether the acquaintance was in the home during the applicable time period during her testimony in this matter. This is in spite of the fact that petitioner hinges his entire

argument regarding the acquaintance's access to the home on the acquaintance's relationship with the sister.

Based on the foregoing, the circuit court correctly determined that "the issue attacking [the acquaintance] was one of relevance" and there was simply no evidence that established that the acquaintance had any opportunity to commit the crimes for which petitioner was convicted.[2] Despite petitioner's arguments to the contrary, it is clear that the evidence he wished to introduce was merely that the acquaintance had a prior record of criminal behavior that he believed was similar to the crimes alleged below. The proposed evidence was insufficient to establish possible contact with the children during the applicable time frame. In accordance with *Harman*, the circuit court properly excluded the evidence in question because it was "too slight to be probative." *Id*. at 494, 270 S.E.2d at 148, Syl. Pt. 1, in part.

We are similarly not persuaded by petitioner's argument that the circuit court's interpretation of *Harman* impermissibly placed a higher evidentiary burden upon him than that imposed upon the State. According to petitioner, while the State was permitted to convict him upon purely circumstantial evidence, the circuit court impermissibly held him to a standard that required him to offer direct evidence of the acquaintance's perpetration of the crime in order to admit the same. This argument, however, misstates both our holding in *Harman* and the circuit court's ruling below. The circuit court did not require petitioner to provide direct evidence of the acquaintance's commission of the crimes. On the contrary, by requiring petitioner to establish that the acquaintance was in the home during the time period in which the crimes were committed, the circuit court sought only circumstantial evidence to show a direct link between the acquaintance and the crimes. Had petitioner been able to provide evidence, either circumstantial or otherwise, directly tying the acquaintance to the crime, admission may have been appropriate. *See* W.Va. R. Evid. 401 (defining relevant evidence as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action"); and W.Va. R. Evid. 402 (stating that relevant evidence is generally admissible). However, petitioner could not provide a single witness that placed the acquaintance in the home during the relevant period. Thus, the circuit court properly excluded the evidence concerning the acquaintance's prior criminal history on the basis that "the jurors could only speculate as to [the acquaintance's] culpability." *See* W.Va. R. Evid. 403

---

[2]Petitioner additionally argues that law enforcement officers testified below that any investigation of a crime of this nature would include an investigation of any individual with a connection to the victims who was also previously convicted of similar prior crimes. Basically, petitioner argues that, had law enforcement identified the acquaintance and investigated his criminal history, they would have likely uncovered that the acquaintance committed the crimes in question. Petitioner relies on this argument as additional proof of a direct link between the acquaintance and the crimes at issue. However, petitioner again fails to acknowledge the incredibly speculative nature of this reasoning. Accordingly, we find that this argument is insufficient to establish the requisite direct link between the crimes and the acquaintance such that evidence of his criminal history should have been admitted.

(permitting the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").

Petitioner goes on to argue that the Court's holding in *Harman* "is brought into question" by a subsequent case, wherein we held as follows:

> While ordinarily rulings on the admissibility of evidence are largely within the trial judge's sound discretion, a trial judge may not make an evidentiary ruling which deprives a criminal defendant of certain rights, such as the right to examine witnesses against him or her, to offer testimony in support of his or her defense, and to be represented by counsel, which are essential for a fair trial pursuant to the due process clause found in the Fourteenth Amendment of the Constitution of the United States and article III, § 14 of the West Virginia Constitution.

Syl. Pt. 3, *State v. Jenkins*, 195 W.Va. 620, 466 S.E.2d 471 (1995). According to petitioner, this holding directly contradicts the holding in *Harman*. Under petitioner's interpretation, our holding in *Jenkins* essentially grants defendants the ability to introduce any evidence in support of their defense, regardless of relevance or the potential to mislead the jury. We do not agree.

First, we note that the *Jenkins* decision did not overturn *Harman*. Moreover, we find that *Harman* is in direct agreement with *Jenkins* and other decisions from the United States Supreme Court of Appeals that petitioner cites in his brief on appeal. Specifically, petitioner relies on *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142 (1986), to argue that evidentiary determinations that deprive a defendant of the right to present a defense constitute reversible error. However, petitioner ignores the portions of that decision that are not supportive of his case, including the holding that "the Constitution leaves to the judges who must make [evidentiary] decisions 'wide latitude' to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" *Id.* at 689-90, 106 S.Ct. at 2146 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). The Court further held that "we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted." *Crane*, 476 U.S. at 690, 106 S.Ct. at 2146 (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)).

Similarly, petitioner's reliance on *Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727 (2006), is misplaced. According to petitioner, the circuit court in this matter erred in excluding evidence of the acquaintance's potential culpability based on the fact that the State's evidence against him was strong, thus violating the Court's holding in *Holmes*. First, this misstates the circuit court's ruling on the admissibility of the evidence in question. As set forth above, the circuit court's decision was predicated on the fact that the evidence was simply irrelevant, given the lack of evidence placing the acquaintance in the home at the relevant time period, and had the potential to mislead the jury because it called for speculation.

Further, petitioner again ignores those portions of the decision that are not supportive of his position. This Court recently analyzed *Holmes* and noted as follows:

the Supreme Court of the United States explained [in *Holmes*] that "[w]hile the [United States] Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."

*State v. Zuccaro*, 239 W.Va. 128, 143, 799 S.E.2d 559, 574 (2017) (quoting *Holmes*, 547 U.S. at 326 (citations omitted)). We further noted that "[a]s an example of this principle, the *Holmes* Court discussed the exclusion of speculative evidence offered by a criminal defendant seeking to show that someone else was the perpetrator." *Zuccaro*, 239 W.Va. at 143, 799 S.E.2d at 574. Specifically, we noted the following from *Holmes*:

> A specific application of this principle is found in rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged. *See, e.g.*, 41 C.J.S., Homicide § 216, pp. 56-58 (1991) ("Evidence tending to show the commission by another person of the crime charged may be introduced by accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded"); 40A Am. Jur. 2d, Homicide § 286, pp. 136-138 (1999) ("[T]he accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged. . . . [Such evidence] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial" (footnotes omitted)). Such rules are widely accepted[.]

*Zuccaro*, 239 W.Va. at 143, 799 S.E.2d at 574 (quoting *Holmes*, 547 U.S. at 327, 126 S.Ct. at 1733). As such, it is clear that our holding in *Harman* comports with constitutional protections permitting defendants to introduce evidence in support of their defense. Accordingly, we find no error in the circuit court's exclusion of the evidence at issue.

Next, petitioner argues that the circuit court erred in refusing to permit him to testify about why he believed someone else committed the crimes in question.[3] In support of this

---

[3]We note, however, that the record shows that petitioner was permitted to testify to his belief that several other individuals could have perpetrated the abuse at issue, including the children's father, mother, and the acquaintance. In support of this assignment of error, petitioner cites to a portion of the transcript wherein he was denied the opportunity to testify to the acquaintance's prior criminal history. He further argues that "[t]he jury – not the judge – should have been allowed to decide if the . . . information [relating to the acquaintance's criminal

(continued . . .)

7

assignment of error, petitioner cites to cases regarding the right of a criminal defendant to testify on their own behalf. His citations, however, relate only generally to a criminal defendant's right to testify and in no way support the position that a criminal defendant has a right to testify to irrelevant or confusing evidence in furtherance of presenting a defense concerning a third-party perpetrator. Despite the general nature of his legal authority, petitioner nonetheless specifically argues that "[p]ursuant to the right to testify, . . . a defendant should be allowed to stand before the jury and sing a song and dance if he so choses. . . ." He then argues that "legislators are allowed to filibuster important . . . laws by simply talking about irrelevant nonsense for hours on end[,]" while a criminal defendant like himself is "not even permitted to take a couple extra minutes to tell [the jury] why he thinks they should not find him guilty." Simply put, none of the cases or argument petitioner advances in support of this assignment of error supports his position. In fact, this assignment of error is, more or less, an extension of his first assignment of error, in that he is arguing that the circuit court should have permitted the introduction of evidence regarding the acquaintance's criminal history. Again, petitioner fails to recognize that, absent evidence placing the acquaintance at the home during the applicable time frame, evidence of his prior criminal convictions was simply irrelevant or had the potential to confuse or mislead the jury. As such, we find that the circuit court properly denied the admission of that evidence and, further, that petitioner's constitutional right to testify on his own behalf was not violated.

Finally, petitioner argues that the circuit court erred in denying his motion for judgment of acquittal on the basis that the evidence was insufficient to support his convictions. This assignment of error implicates the circuit court's ruling on petitioner's motion for judgment of acquittal, to which this Court applies a de novo standard of review:

> The trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996). Regarding a claim that the evidence at trial was insufficient to convict, this Court has stated that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable

---

history] was important or not." Given that petitioner was permitted to testify to his belief that several other people could have committed the crimes at issue and the fact that his argument in support of this assignment of error is clearly limited to this lone evidentiary ruling, our review of this assignment of error will address only the circuit court's denial of petitioner's attempt to testify to the criminal history of the acquaintance.

to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Further,

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part. With these standards in mind, we turn to petitioner's assignment of error.

Contrary to petitioner's argument on appeal, the evidence at trial overwhelmingly supported his conviction. Pursuant to West Virginia Code § 61-8D-3(a),

[i]f any parent, guardian or custodian shall abuse a child and by such abuse cause such child bodily injury as such term is defined in section one, article eight-b of this chapter, then such parent, guardian or custodian shall be guilty of a felony and, upon conviction thereof, shall be fined not less than $100 nor more than $1,000 and imprisoned in a state correctional facility for not less than one nor more than five years, or in the discretion of the court, be confined in jail for not more than one year.

Further, West Virginia Code § 61-8B-1 defines "bodily injury" as "substantial physical pain, illness or any impairment of physical condition."

In support of his assignment of error, petitioner argues that no witness saw him abuse the children. He further argues that the evidence shows that "the pertinent timeframe for the infliction of injuries [was] anytime from December 23rd to December 30th, 2014." Additionally, petitioner makes much out of the number of individuals who had access to the children during this time period and argues that any one of them could have committed the crimes in question. However, this argument ignores several key facts concerning the children's injuries.

Specifically, the evidence established that, other than minor bruising to one child's leg, the children did not exhibit any injuries when they were left in petitioner's custody on December 26, 2014. Petitioner watched the children until the mother came home late that night, at which point she noticed a bruise on one child's face. According to the mother, the bruises on the children continued to worsen over the next two days, until she decided to take them to the hospital on December 30, 2014. Though the mother testified that she did not see additional

9

bruising beyond the bruise to B.M.'s jaw until December 30, 2014, the forensic nurse testified that the uniform color of the bruising indicated that it all likely occurred at the same time. Petitioner is correct that the nurse testified that there was no way to determine the exact date the bruising occurred. However, he ignores the fact that the nurse's testimony, in conjunction with the mother's testimony and that of other witnesses who saw the children prior to their being left in petitioner's care, allows a reasonable jury to find that all of the children's extensive bruises were inflicted at some point on December 26, 2014, during the time period that the children were in petitioner's custody. Basically, petitioner ignores the fact that the bruising in question was identified when the mother came home after he watched the children on December 26, 2014, thereby limiting the time period for the commission of the crimes to a shorter window than petitioner argues on appeal.

Based upon this evidence, it is clear that petitioner's arguments regarding his absence from the subject property at various points between December 26, 2014, and December 30, 2016, as well as his arguments as to the presence of various other individuals during this same time period, are of little importance. Similarly, the fact that several witnesses testified that they never saw petitioner act inappropriately toward the children or his lack of a CPS history are not determinative of this issue. In support of this assignment of error, petitioner also alleges that there was no evidence that established how the children were injured, but this argument is wholly unsupported by the record. On the contrary, the nurse testified that the injuries were the result of blunt force trauma inflicted by multiple blows.

Petitioner additionally raises arguments in support of this assignment of error regarding allegations that the jury "did not rationally review the evidence" or was otherwise "emotionally inflamed by a medical expert's testimony. . . ." In short, petitioner argues that because he was acquitted of the lone charge related to the incident of December 6, 2014, the jury must have "relied on an impermissible factor or misapprehension of the law" in finding him guilty of the crimes related to the December 26, 2014, injuries. We note, however, that petitioner cites to no concrete evidence of any such jury impropriety. Instead, these arguments are based entirely on speculation. Further, to the extent petitioner seeks to challenge the jury's deliberations, such a claim is not recognizable herein. *See* Syl. Pt. 1, *State v. Greenfield*, 237 W.Va. 773, 791 S.E.2d 403 (2016) ("'A jury verdict may not ordinarily be impeached based on matters that occur during the jury's deliberative process which matters relate to the manner or means the jury uses to arrive at its verdict.' Syl. Pt. 1, *State v. Scotchel*, 168 W.Va. 545, 285 S.E.2d 384 (1981)."). Ultimately, we find that the evidence, viewed in the light most favorable to the prosecution, clearly supports petitioner's convictions. Accordingly, we find no error in the circuit court's denial of petitioner's motion for judgment of acquittal.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 15, 2018

10

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating.