IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

No. 15-0976

**FILED**
**April 26, 2017**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

ROCCO ZUCCARO,
Defendant Below, Petitioner.

Appeal from the Circuit Court of Brooke County
Honorable Ronald E. Wilson, Judge
Criminal Action No. 13-F-24

AFFIRMED

Submitted: April 4, 2017
Filed: April 26, 2017

Matthew D. Brummond, Esq.
Charleston, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Zachary Aaron Viglianco, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

CHIEF JUSTICE LOUGHRY delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "'"To warrant a change of venue in a criminal case, there must be a showing of good cause therefor, the burden of which rests on the defendant, the only person who, in any such case, is entitled to a change of venue. The good cause aforesaid must exist at the time application for a change of venue is made. Whether, on the showing made, a change of venue will be ordered, rests in the sound discretion of the trial court; and its ruling thereon will not be disturbed, unless it clearly appears that the discretion aforesaid has been abused." Point 2, Syllabus, *State v. Wooldridge*, 129 W.Va. 448, 40 S.E.2d 899 (1946).' Syllabus Point 1, *State v. Sette*, 161 W.Va. 384, 242 S.E.2d 464 (1978)." Syl. Pt. 1, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d 731 (1994).

2. "One of the inquiries on a motion for a change of venue should not be whether the community remembered or heard the facts of the case, but whether the jurors had such fixed opinions that they could not judge impartially the guilt or innocence of the defendant." Syl. Pt. 3, *State v. Derr*, 192 W.Va.165, 451 S.E.2d 731 (1994).

3. "Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347

i

S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence." Syl. Pt. 2, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).

4. "Although premeditation and deliberation are not measured by any particular period of time, there must be some period between the formation of the intent to kill and the actual killing, which indicates the killing is by prior calculation and design. This means there must be an opportunity for some reflection on the intention to kill after it is formed." Syl. Pt. 5, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

5. "In criminal cases where the State seeks a conviction of first degree murder based on premeditation and deliberation, a trial court should instruct the jury that murder in the first degree consists of an intentional, deliberate, and premeditated killing which means that the killing is done after a period of time for prior consideration. The duration of that period cannot be arbitrarily fixed. The time in which to form a deliberate and premeditated design varies as the minds and temperaments of people differ and according to the circumstances in which they may be placed. Any interval of time between the forming of the intent to kill and the execution of that intent, which is of sufficient duration for the accused to be fully conscious of what he intended, is sufficient to support a conviction for first degree murder. To the extent that *State v. Schrader*, 172 W.Va. 1, 302 S.E.2d 70 (1982), is inconsistent with our holding today, it is expressly overruled." Syl. Pt. 6, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

**LOUGHRY, Chief Justice:**

The petitioner, Rocco Zuccaro, appeals the September 11, 2015, order of the Circuit Court of Brooke County sentencing him to life in prison without the possibility of parole for his conviction of first degree murder. On appeal to this Court, the petitioner contends he is entitled to a new trial because the circuit court committed reversible error by denying his motion for a change of venue and by excluding alleged evidence of the victim's prior bad acts. In the alternative, the petitioner asserts that the State's evidence was insufficient to prove premeditation and this Court should reduce his conviction to second degree murder. The State of West Virginia responds that there was no error. After carefully reviewing the parties' written and oral arguments, the record on appeal, and the applicable law, we affirm the conviction.

## I. Factual and Procedural Background

On the afternoon of February 19, 2013, Dolly Pratz went to the home of her adult son, Jason Pratz, in McKinleyville, Brooke County. After using a key to enter through the locked back door, she found her son dead and lying in a pool of blood. Police and forensics experts would later determine that Jason had been killed by three gunshots inflicted with a .45 caliber Glock handgun. There were droplets of blood in a hallway and continuing to the back of the home where the body was discovered, suggesting that the victim had

attempted to flee from the shooter. The front door was partly ajar, and there were no signs of forced entry or a struggle. Several valuable items were left in the home, indicating that the perpetrator had not been there to commit a burglary.

Through their investigation, the police concluded that the shooting occurred sometime between 5:10 p.m. and 6:30 p.m. on February 18th, which was the evening before the body was discovered. Mrs. Pratz, who lived next door to Jason, last saw him at around 5:10 p.m. on February 18. She had called Jason on his cellular telephone at 4:55 p.m. and they spoke on the telephone as he walked to her house to carry in firewood. Jason stayed at his mother's home approximately ten minutes, then went to his own home to change clothes for a committee meeting he planned to attend at 6:30 p.m. that evening. The meeting was scheduled to plan the "Brooke Hills Spook House," a local haunted house attraction to be held in the fall. Jason was actively involved with the haunted house event and told both his mother and George Barchiesi Jr., the haunted house's co-director, that he was going to attend the meeting that evening. When Jason failed to appear at the meeting, Pamela Barchiesi, also a co-director of the haunted house, sent him a text message at 6:30 p.m. She testified that he did not respond to this text. Later that evening, George Barchiesi called Jason's cellular telephone three times but received no answer. Mrs. Pratz testified that when Jason left her home, he was wearing a blue sweatshirt. When his body was found, Jason was wearing a black "Brooke Hills Spook House" t-shirt and his cellular telephone was lying nearby.

2

The petitioner and the victim were acquainted, and the police investigation revealed that a man matching the petitioner's description was in the victim's neighborhood during the relevant time frame. Video surveillance footage taken by a neighbor's home security system showed a man walking up the hill toward Jason Pratz's home at 5:17 p.m. on February 18th. The man was wearing a backpack, dark pants, a white shirt, and an orange ski cap/toboggan. The video surveillance also showed the same man ten minutes later, running back down the hill with the backpack in his hand. The victim's neighbors, Aaron and Brianna McConnell, testified they saw a man wearing these clothes run down the hill to a silver Subaru car and then drive off at a high rate of speed. Mr. McConnell described the silver Subaru as having a black stripe down the side.

The petitioner's neighbor, Amy Lemmon, saw the petitioner wearing a backpack, dark pants, a white shirt, and an orange toboggan on February 18th, and the petitioner's cousin testified the petitioner "always" wore orange toboggans. On February 21st, the police stopped the petitioner while he was driving a silver Subaru with a black stripe matching the description given by Mr. McConnell. A backpack, which contained a white shirt and orange toboggan, was found in the car. Both the clothing in the backpack and the vehicle's steering wheel tested positive for gunshot residue.

3

When interviewed by police on February 21st, the petitioner denied that he had been in West Virginia on February 18th; rather, he claimed to have been in a particular Starbucks' coffee shop in Pittsburgh, Pennsylvania, the entirety of that afternoon and evening. Based on security camera footage the police later obtained from the Starbucks, the petitioner's alibi was disproven. During the police interview, the petitioner initially denied owning a gun. Later, however, he told police that while he had owned a .45 caliber Glock pistol, it was stolen from him.[1] His story about the theft was contradicted by two witnesses to whom the petitioner showed his Glock pistol on February 15th–just three days before Jason Pratz was killed. One of these witnesses, the petitioner's friend Shauna-Lea Leger, testified she observed the petitioner place the handgun in the backpack that he always carried with him. Further, the petitioner's father saw the petitioner with a gun on February 21st, which was after the victim's death.[2] In addition, Ms. Leger went to the petitioner's house on the evening of February 18th, but his car was not parked outside and she saw no signs of him when she entered the home.[3]

_____

[1]The police confirmed that the petitioner had purchased a .45 caliber Glock and ammunition in 2012.

[2]Police never located the petitioner's Glock handgun.

[3]Ms. Leger only entered the petitioner's kitchen to check on some pets. She did not go throughout the house looking for him.

At trial, the petitioner's counsel sought to show that no gunshots were fired during the time frame on February 18th when the man with the backpack was seen on the victim's street.[4]  None of the neighbors reported hearing gunshots that evening, including Mrs. Pratz who lived next door.  One neighbor, Kathy Stewart, reported hearing three gunshots, but it was her recollection that the shots occurred between 1:00 p.m. and 3:00 p.m. on either February 17th or 18th.[5]  At trial, the petitioner presented the testimony of an acoustics expert, Julie Wiebusch, who inspected the construction of homes in the area, took measurements with acoustic equipment, and used a mathematical model to estimate sound levels from various points in the neighborhood.  In Ms. Wiebusch's opinion, if someone had fired a .45 caliber Glock on February 18th at around 5:18 to 5:27 p.m., people in the neighborhood would have heard it.

The State presented evidence from police officers who conducted a bullet trap test inside the victim's home.  One officer fired a gun multiple times into a barrel placed inside the victim's home, while the other officer went to various locations in the neighborhood to determine whether he could hear the gunfire.  The officers determined that

[4]During closing argument, the petitioner's counsel suggested that running down the street "is consistent with" things other than committing murder, such as "finding a friend [already] dead, maybe doing something you shouldn't be doing[.]"

[5]Ms. Stewart's recollection places the gunshots at a time when the victim was still alive.  As set forth above, Jason Pratz's mother testified that Jason visited her home at around 5:00 p.m. on February 18th to carry in firewood.  However, Ms. Stewart admitted while testifying that she did not have a good recollection of the time period.

gunshots could not be heard from inside two area homes when the front doors of those homes, and the front door of the victim's home, were closed. Similarly, Mrs. Pratz, who was inside her own home next door, with her doors and windows closed, did not hear any shots fired during the bullet trap test. According to Mrs. Pratz's recollection, the windows in Jason's home were shut on the day of the February murder.

The Brooke County Grand Jury indicted the petitioner for first degree murder[6] in April 2013. His trial was delayed, however, due to mental health issues which caused the petitioner to be deemed incompetent, but restorable, to stand trial. He was temporarily committed to Sharpe Hospital, a psychiatric facility. On March 23, 2015, the petitioner escaped from Sharpe Hospital by scaling a twenty-foot wall and running away. After conducting a multi-county search, law enforcement officials apprehended him. Subsequently, after receiving treatment, the petitioner was deemed competent and a jury trial was scheduled for July 2015.

Before trial, the petitioner filed a motion for a change of venue due to publicity surrounding the homicide, his escape from Sharpe Hospital, and the prosecution's pre-trial motion asking that extra security measures be taken at trial. The circuit court held a hearing and considered evidence that the petitioner claimed was proof of a hostile environment

---

[6]*See* W.Va. Code § 61-2-1 (2014).

6

throughout Brooke County, including news and social media items, but deferred its ruling on venue until jury voir dire could be conducted. Subsequently, after prospective jurors completed lengthy questionnaires about themselves and their knowledge of the case, the petitioner submitted additional evidence and argument to the trial court in support of his motion for a change of venue. Ultimately, after conducting jury voir dire, the circuit court allowed the trial to remain in Brooke County. Although some of the jurors had previously heard about the case, they, and all of the other jurors who served, indicated they could fairly judge the matter upon the evidence presented.

Included in the petitioner's pre-trial filings was a notice of intent to use Rule 404(b)[7] evidence concerning alleged prior bad acts of the victim. The petitioner indicated his intention to assert at trial that an unknown third party was the killer. To further that argument, he sought to offer evidence that the victim sold drugs and firearms that could have exposed him to dangerous people who might have killed him. The State filed a motion in limine to preclude the petitioner from introducing this evidence. After hearing testimony and argument over the course of multiple pre-trial hearings, the circuit court ruled against the admissibility of the alleged evidence.

---

[7]W.Va. R. Evid. 404(b) (2017); *see* section II-B of this opinion, *infra*.

At the conclusion of the July 2015 trial, the jury found the petitioner guilty of first degree murder. After hearing evidence in a separate mercy phase of the trial, the jury refused to recommend mercy. Through its September 11, 2015, order, the circuit court sentenced the petitioner to life in prison without the possibility of parole. This appeal followed.

## II. Discussion

The petitioner raises three assignments of error on appeal. He asserts that the circuit court committed reversible error in denying his motion for a change of venue, and in excluding his proffered bad acts evidence concerning the victim. In the alternative, he argues there was insufficient evidence presented at trial to prove the murder was premeditated. Each of the petitioner's assignments of error requires us to undertake a different analysis and apply a different standard of review. Accordingly, a discussion of each issue, along with the respective standard of review, is set forth below.

### A. Denial of Motion for Change of Venue

Contending that pre-trial publicity created a hostile environment in Brooke County that poisoned the prospective jury pool against him, the petitioner argues the circuit court erred by denying his motion for a change of the trial venue. The petitioner asserts that, as a result of the Brooke County venue, he was denied a fair trial. "The right to a trial by an

8

impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and

Fourteenth Amendments of the United States Constitution and Article III, Section 14 of the

West Virginia Constitution." Syl. Pt. 4, in part, *State v. Derr*, 192 W.Va. 165, 451 S.E.2d

731 (1994) (internal citations omitted). In response, the State maintains that the circuit court

correctly denied the motion for change of venue and the petitioner received a fair trial by an

impartial jury.

On appeal, we consider this issue using an abuse of discretion standard. Syl.

Pt. 2, *State v. Gangwer*, 169 W.Va. 177, 286 S.E.2d 389 (1982) ("Whether a change of venue

is warranted rests in the sound discretion of the trial court, and its ruling thereon will not be

disturbed, unless it clearly appears that such discretion has been abused."); *accord Derr*, 192

W.Va. at 167, 451 S.E.2d at 733, syl. pt. 1 (recognizing abuse of discretion standard of

review for venue rulings). "In making our determination, we consider not only the pretrial

showing but also the actual voir dire of the jury to determine whether an abuse of discretion

occurred." *Id.* at 171, 451 S.E.2d at 737 (citation omitted). The petitioner had the burden

of showing good cause for a change of venue:

> "'To warrant a change of venue in a criminal case, there
> must be a showing of good cause therefor, the burden of which
> rests on the defendant, the only person who, in any such case, is
> entitled to a change of venue. The good cause aforesaid must
> exist at the time application for a change of venue is made.
> Whether, on the showing made, a change of venue will be
> ordered, rests in the sound discretion of the trial court; and its
> ruling thereon will not be disturbed, unless it clearly appears that

9

the discretion aforesaid has been abused.'  Point 2, Syllabus,
*State v. Wooldridge*, 129 W.Va. 448, 40 S.E.2d 899 (1946)."
Syllabus Point 1, *State v. Sette*, 161 W.Va. 384, 242 S.E.2d 464
(1978).

*Derr*, 192 W.Va. at 167, 451 S.E.2d at 733, syl. pt. 1.

Seeking to support his argument, the petitioner references multiple stories in the media concerning his escape from Sharpe Hospital as well as the prosecution's pre-trial motion seeking additional security measures at trial.  In some of the media reports about the petitioner's escape, the Brooke County Sheriff is quoted as saying the petitioner is a "plotting" and "controlling" person.  Furthermore, although the prosecutor's motion was styled "State's Motion for Heightened Security at the Trial of the Defendant," a local newspaper headline characterized the request as "Prosecutor wants shock belt for Zuccaro." In particular, the petitioner relies on unfavorable public comments posted to internet sites, several of which expressed the commentator's belief that the petitioner was guilty.

Downplaying the media coverage, the State contends that the coverage was not so extensive as to create a county-wide hostile sentiment.  The record contains one print news article, three short articles posted on television news websites, and a Facebook post made by a television news station that, according to the State, was shared 314 times.  Moreover, there

10

is no indication from the petitioner's evidence that the people who posted comments to the online stories resided in West Virginia, much less in Brooke County, or that any of the jurors were exposed to or authored the negative internet comments.

The petitioner also points out that answers provided in the juror questionnaires demonstrate that some of the prospective jurors had previously heard about the homicide and/or his escape from Sharpe Hospital. Noting that the circuit court excluded evidence of the escape from the trial, the petitioner argues that if it was too prejudicial for jurors to hear in sworn testimony, then the media coverage could have similarly impacted the jurors in a prejudicial fashion. In a pre-trial letter to the circuit court, the petitioner's counsel asserted that twenty-eight of the fifty-two potential jurors who returned an initial batch of questionnaires either exhibited some form of bias *or* saw something negative in the media. The petitioner also hired a graduate student who, using information provided by the petitioner's counsel,[8] broadly calculated that "between 36.04% and 71.65% of potential jurors" who completed questionnaires "would be biased against" the petitioner.

_____

[8]There is no indication in the appendix record that the graduate student, who was studying the field of statistics, personally analyzed the questionnaires to determine whether the prospective jurors exhibited bias and/or had previously heard about the case. At the beginning of his report, the student wrote that "the answers [in the jury questionnaires] . . . were reviewed for bias by" defense counsel.

11

Having reviewed the appendix record, we find no abuse of discretion in the circuit court's venue ruling. The petitioner cites precedent which recognizes that "'"[a] present hostile sentiment against an accused, extending throughout the entire county in which he is brought to trial, is good cause for removing the case to another county." Point 2, Syllabus, *State v. Dandy*, 151 W.Va. 547, 153 S.E.2d 507 (1967), *quoting* Point 1, Syllabus, *State v. Siers*, 103 W.Va. 30, 136 S.E. 503 (1927).' Syllabus Point 2, *State v. Sette*, 161 W.Va. 384, 242 S.E.2d 464 (1978)." *Derr*, 192 W.Va. at 167, 451 S.E.2d at 733, syl. pt. 2. Critically, however, good cause for a change of venue is not present simply because there was publicity about a crime or a criminal defendant, even if prospective jurors saw or heard that publicity. As we have explained, the focus of the inquiry "should not be whether the community remembered or heard the facts of the case, but whether the jurors had such fixed opinions that they could not judge impartially the guilt or innocence of the defendant." *Id.* at 1675, 451 S.E.2d at 733, syl. pt. 3, in part. Good cause to warrant a change of venue requires a finding that the defendant cannot receive a fair trial in the county where the crime was committed. "Widespread publicity, of itself, does not require change of venue, and neither does proof that prejudice exists against an accused, unless it appears that the prejudice against him is so great that he cannot get a fair trial." *Gangwer*, 169 W.Va. at 177, 286 S.E.2d at 391, syl. pt. 1.

12

The petitioner's argument fails because he wrongly equates the existence of jury bias with exposure to information about the case. The graduate student's extremely broad calculation of the number of potentially "biased" jurors is based on the same mistaken premise. The evidence in the appendix record did not prove that the community, as a whole, had such fixed opinions as to prevent the petitioner from receiving a fair trial. Indeed, after voir dire the trial court was able to seat a jury, and each of those jurors indicated their respective ability to fairly consider the evidence. Furthermore, the petitioner does not assign error regarding the court's decision to allow any particular juror to remain on the panel. For the above reasons, we find no abuse of discretion in the circuit court's decision to hold the trial in Brooke County.

**B. Denial of the Petitioner's Rule 404(b) Motion**

Next, the petitioner argues the circuit court committed reversible error by denying his motion to present evidence of the victim's prior bad acts pursuant to Rule 404(b) of the West Virginia Rules of Evidence. For this assignment of error, the petitioner asks us to interpret the West Virginia Rules of Evidence, which we do pursuant to a plenary standard of review. "An interpretation of the West Virginia Rules of Evidence presents a question of law subject to *de novo* review." Syl. Pt. 1, *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995). Furthermore, with regard to the circuit court's ruling on the admissibility of the particular proffered evidence, this Court has explained as follows:

"[T]he standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the 'other acts' evidence is more probative than prejudicial under Rule 403." *State v. Jonathan B.*, 230 W.Va. 229, 236, 737 S.E.2d 257, 264 (2012) (quoting *State v. LaRock*, 196 W.Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996)).

*State v. Timothy C.*, 237 W.Va. 435, 443, 787 S.E.2d 888, 896 (2016). It is also well-established that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Roudoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998).

Rule 404(b) provides, in part, that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[9] However, the evidence may be

---

[9]The full text of West Virginia Rule of Evidence 404(b) (2017) provides:

> (b) *Crimes, Wrongs, or Other Acts*.
> (1) *Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) *Permitted Uses; Notice Required*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

14

admissible for another purpose. *See id.* In support of his motion, the petitioner argued that he did not kill Jason Pratz and had no motive to do so. He contends the trial court's evidentiary ruling prevented him from offering the remainder of his defense theory: that unknown, dangerous third parties could have had a motive to kill Jason Pratz because, after losing his job, Jason became a "low level" drug dealer and sold illegal firearms. The petitioner's pre-trial 404(b) notice disclosed his intent to offer into evidence text messages purportedly showing that the victim offered to sell a handgun and an illegal silencer to his friends, as well as employment records showing the victim was terminated from his employment because of workplace drug use. In a separate motion in limine, the State opposed and sought to exclude this proffered evidence.

During pre-trial hearings the circuit court heard testimony and argument regarding admission of the proposed evidence. The State presented testimony from the person with whom the victim had exchanged the text messages, his friend Barbara Hershberger. She explained the text messages concerned her husband's interest in a gun show the victim was going to attend, and the victim was *not* trying to sell a gun or a silencer

---

absence of mistake, or lack of accident. Any party seeking the admission of evidence pursuant to this subsection must:
(A) provide reasonable notice of the general nature and the specific and precise purpose for which the evidence is being offered by the party at trial; and
(B) do so before trial–or during trial if the court, for good cause, excuses lack of pretrial notice.

15

to either her or her husband, as the defense counsel suggested. According to Ms. Hershberger's testimony, a reference in the text messages about using a silencer was simply a joke. Furthermore, while the petitioner presented employment records which demonstrated that the victim had been terminated from his job at a hospital for being under the influence of drugs, and suggesting he may have stolen pain medication from the hospital, these employment records did not indicate he ever gave or sold drugs to other people. Defense counsel informed the circuit court that the only evidence through which he would seek to show that the victim was a drug dealer would be through the direct testimony of the petitioner. Defense counsel opted against presenting pre-trial testimony from the petitioner, even though the circuit court indicated that any pre-trial testimony would be limited to this issue. The petitioner did not present evidence of anyone purchasing drugs, guns, or gun silencers from the victim, nor did he present any evidence showing the victim had ever been suspected of, arrested for, or convicted of such crimes. In short, no evidence was presented during the pre-trial hearings to establish the truth of the evidence the petitioner asked to have admitted pursuant to Rule 404(b). Moreover, none of the petitioner's proffered evidence pointed to any particular third party who might have had the means, opportunity, or motive to kill the victim. The petitioner merely speculated that being a drug dealer and selling firearms could have exposed the victim to bad people who might have decided to kill him.

16

In its pre-trial "Memorandum Decision and Order," the circuit court found that the petitioner failed to provide credible evidence to show the victim was a drug dealer or had illegally sold guns or silencers. Furthermore, the court found no evidence to even suggest a connection between the victim's alleged bad conduct with "seedy characters" and this murder. Accordingly, the court ruled that the petitioner could not introduce this alleged drug and gun evidence at trial.

On appeal, the petitioner argues the circuit court should not have required him to present evidence during the pre-trial hearings that Jason Pratz was a drug dealer and firearms seller. He contends he should have been allowed to merely proffer these allegations to the circuit court, and the jury should have been allowed to decide the truth thereof. Although the petitioner expressly sought to offer this evidence pursuant to Rule 404(b), and the circuit court complied with well-established precedent regarding the admission of Rule 404(b) evidence, the petitioner urges this Court to adopt different procedures for the admission of "other bad acts" evidence when it is offered by a criminal defendant against the State.[10] The State responds in support of the circuit court's methodology and ruling. As discussed below, we decline to adopt the special rule sought by the petitioner.

---

[10]"A defendant's desire to prove other crimes by a third person is sometimes called 'reverse' Rule 404(b) evidence." 1 Louis J. Palmer, Handbook on Evidence for West Virginia Lawyers § 404.04[1][d] (6th ed. 2015).

To understand the parties' arguments on this issue, it is necessary to review this Court's seminal case on the admission of Rule 404(b) evidence in West Virginia courts, *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994). *McGinnis*, like the overwhelming majority of 404(b) issues brought to this Court on appeal, concerned the State's introduction in a criminal trial of the prior bad acts of the defendant. However, nothing in the language of Rule 404(b) limits its application solely to the prosecution's evidence.[11] Writing for the Court in *McGinnis*, Justice Cleckley acknowledged the applicability of Rule 404(b) to criminal defendants and to parties in civil cases:

> By using the "prosecution" as the subject of our discussion, we do not mean to imply that application of Rule 404(b) of the West Virginia Rules of Evidence is limited to criminal cases. Although we apply it more often in the criminal context, we also apply it to civil cases. *See generally TXO Production v. Alliance Resources*, 187 W.Va. 457, 419 S.E.2d 870 (1992), *aff'd* 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993). Similarly, Rule 404(b) evidence is equally available to a defendant in a criminal case. *See generally State v. Maynard*, 170 W.Va. 40, 289 S.E.2d 714 (1982). *The standards that we discuss for the admission of Rule 404(b) evidence in criminal cases when offered by the prosecution apply to all cases.* We note, however, that under Rule 403 the risk of prejudice is not likely to be as great when the defendant in a criminal case offers collateral evidence against a third person. *See United States v. Aboumoussallem*, 726 F.2d 906, 911 (2nd Cir. 1984) (court observes a difference in admissibility standard:

---

[11]*See supra* note 9.

> a defendant's offer of 404(b) evidence "as a shield need not be as restrictive as when a prosecutor uses such evidence as sword" because the problems of prejudice "are normally absent").

*McGinnis*, 193 W.Va. at 154 n.6, 455 S.E.2d at 523 n.6 (emphasis added). Indeed, when Rule 404(b) was amended in 2014, the language of the rule's notice requirement was broadened to require all parties–not just prosecutors–to provide prior notice when they intend to offer evidence pursuant to Rule 404(b).[12]

*McGinnis* set forth the framework for the admission of Rule 404(b) evidence in West Virginia state courts. After the proponent of the evidence specifies the purpose for which it is offered, the trial court does the following:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the

---

[12]Prior to amendments made in 2014, Rule 404(b) provided, in part, that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." As quoted in note nine, *supra*, the amended rule now provides that "any party" seeking to offer Rule 404(b) evidence must provide notice. The 2014 comment to the rule explains that modifications to the language included "broad[ening] the requirement of reasonable notice to every party, not just the state in a criminal prosecution, of the general nature of and the specific and precise purpose for which the evidence is being offered by the party at trial." The comment makes clear that there was "no intent to change any result in any ruling on evidence admissibility."

19

trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

*McGinnis*, 193 W.Va. at 151, 455 S.E.2d at 520, syl. pt. 2.[13] Thus, after hearing the evidence in camera, the trial court first determines whether, by a preponderance of the evidence, the alleged prior bad acts occurred and were committed by the alleged actor. *Id.* If the court finds this showing has been made, it determines the relevancy of the evidence under Rules

---

[13]This point of law was later modified to require the issuance of a limiting instruction. Syl. Pt. 5, in part, *State ex rel. Caton v. Sanders*, 215 W.Va. 755, 601 S.E.2d 75 (2004) ("If the 404(b) evidence is determined to be admissible, then a limiting instruction shall be given at the time the evidence is offered, and must be repeated in the trial court's general charge to the jury at the conclusion of the evidence.").

20

401[14] and 402[15] of the Rules of Evidence and conducts the balancing required by Rule 403[16] of the Rules of Evidence. *Id.*

In *McGinnis* and the earlier *TXO Production* opinion, this Court adopted many of the procedures for the admission of Rule 404(b) evidence announced by the Supreme Court of United States in *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988). *See McGinnis*, 193 W.Va. at 155, 455 S.E.2d at 524; *TXO Production*, 187 W.Va. at 470, 419 S.E.2d at 883. As a matter of state law, however, this Court in *McGinnis* chose to deviate from *Huddleston* in one aspect. In *Huddleston*, the Supreme Court ruled that when federal

[14]West Virginia Rule of Evidence 401 (2017) provides:

> Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

[15]West Virginia Rules of Evidence 402 (2017) provides:

> Relevant evidence is admissible unless any of the following provides otherwise: (a) the United States Constitution; (b) the West Virginia Constitution; (c) these rules; or (d) other rules adopted by the Supreme Court of Appeals of West Virginia. Irrelevant evidence is not admissible.

[16]West Virginia Rule of Evidence 403 (2017) provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

trial courts decide the admissibility of evidence offered under Federal Rule of Evidence 404(b), they do so using the conditional admissibility provision in Federal Rule of Evidence 104(b).[17] *Huddleston*, 485 U.S. at 690; *McGinnis*, 193 W.Va. at 157-58, 455 S.E.2d at 526-27. This means that federal judges examine proposed Rule 404(b) evidence only to determine whether the *jury* could reasonably find the proffered facts to be true by a preponderance of the evidence. *Id.* In contrast, this Court in *McGinnis* held that in West Virginia, trial judges shall determine the admissibility of proposed Rule 404(b) evidence pursuant to their authority in West Virginia Rule of Evidence 104(a).[18] *McGinnis*, 193 W.Va.

---

[17]Federal Rule of Evidence 104 (2017) provides, in part:

> (a) *In General.* The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.
> (b) *Relevance That Depends on a Fact.* When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later.

[18]West Virginia Rule of Evidence 104 (2017) provides, in part:

> (a) *In general.* The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.
> (b) *Relevance that depends on a fact.* When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later.
> . . . .

22

at 158; 455 S.E.2d at 527. The effect of this holding is that a West Virginia trial judge makes a preliminary determination about proposed Rule 404(b) evidence *before* the evidence may be introduced to the jury. Specifically, "[a]fter hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts." *McGinnis*, 193 W.Va. at 151, 455 S.E.2d at 520, syl. pt. 2, in part.

In the case sub judice, the petitioner urges this Court, as a matter of policy, to depart from our *McGinnis* procedures whenever a criminal defendant offers Rule 404(b) evidence adverse to the State. He asks that criminal defendants be allowed to merely proffer Rule 404(b) evidence to the trial court, skipping the step where the judge makes an initial determination that the other bad acts occurred and were committed by the alleged actor. In support of his request, the petitioner states that the primary reason given in *McGinnis* for adopting our current approach was the protection of criminal defendants from an unfair risk of conviction, which is unnecessary when the evidence is offered by the defendant. *See McGinnis*, 193 W.Va. at 158, 455 S.E.2d at 527.

---

> (d) *Cross-examining a defendant in a criminal case.* By testifying on a preliminary question, a defendant in a criminal case does not become subject to cross-examination on other issues in the case.

Although this rule was revised and re-worded after *McGinnis*, the amendments do not impact our decision in this case.

23

We reject the petitioner's request to modify our existing evidentiary law. As set forth above, our *McGinnis* procedures are not limited solely to situations where the State offers prior bad acts evidence about the criminal defendant. While the risk of prejudice is not likely to be as great when the defendant offers collateral evidence against a third person,[19] the State nonetheless has a legitimate interest in avoiding the presentation of unreliable and false collateral evidence to the jury. *See United States v. Scheffer*, 523 U.S. 303, 309 (1998) ("State and Federal Governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial. Indeed, the exclusion of unreliable evidence is a principal objective of many evidentiary rules.") (citations omitted). Moreover, the jury might ignore evidence showing guilt beyond a reasonable doubt because the victim was cast as a bad person who "deserved what he got." The State's interests also include avoiding jury confusion, as well as avoiding the expenditure of time and resources on a "mini-trial" within the trial to dispute the veracity of the collateral evidence. Applying the *McGinnis* procedures ensures a fair trial for all parties.[20]

---

[19]*See McGinnis*, 193 W.Va. at 154 n.6, 455 S.E.2d at 523 n.6.

[20]Courts in West Virginia also apply the *McGinnis* framework to Rule 404(b) evidence offered in civil cases. For example, in *Stafford v. Rocky Hollow Coal Company*, 198 W.Va. 593, 482 S.E.2d 210 (1996), this Court reversed the jury's verdict in an employment case because the trial court failed to perform the analysis specified in *McGinnis* before admitting prior bad acts evidence of the defendant's parent corporation. The trial court's missteps included failing to make a finding, by a preponderance of the evidence, that the prior bad acts had occurred. 198 W.Va. at 599, 482 S.E.2d at 216. In *Stafford*, the Court acknowledged that when prior bad acts evidence is offered in a civil case, "the risk of prejudice under Rule of Evidence 403 is not likely to be as great" as when such evidence is offered in a criminal case. 198 W.Va. at 598, 482 S.E.2d at 215. Nonetheless, our reliance on the *McGinnis*

24

Furthermore, the petitioner's argument on appeal fails to account for a critical aspect of the circuit court's ruling: that there lacked any connection between the victim's alleged bad conduct and this crime. Even if the circuit court had accepted the petitioner's proffer, there was nothing to link the victim's bad acts and this murder. It was pure speculation on the petitioner's part that some unknown "seedy character" might have had a reason to, and did in fact, kill Jason Pratz because of a fantastical drug or gun transaction. When any litigant offers evidence, including Rule 404(b) evidence, the trial court considers its relevance under Rule of Evidence 401[21] and performs the balancing test required by Rule of Evidence 403.[22] *See McGinnis*, 193 W.Va. at 151, 455 S.E.2d at 520, syl. pt. 2, in part ("[I]f a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence."). Indeed, the Rule 401/403 analysis was the focus of several courts that have addressed the admissibility of reverse Rule 404(b) evidence.

---

analysis held firm.

[21]*See supra* note 14.

[22]Rule 403 permits a trial court to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. *See supra* note 16.

For example, in a case where a criminal defendant wished to offer 404(b) evidence to show that an alternate suspect committed the crime, the Supreme Court of Colorado explained as follows:

> The touchstone of relevance in this context is whether the alternate suspect evidence establishes a non-speculative connection or nexus between the alternate suspect and the crime charged. Where the evidence concerns other acts by the alternate suspect, a court must look to whether all the similar acts and circumstances, taken together, support a finding that the same person probably was involved in both the other act and the charged crime.

*People v. Elmarr*, 351 P.3d 431, 438 (Colo. 2015). "[E]ven relevant alternate suspect evidence may be excluded if its probative value is substantially outweighed by countervailing policy considerations under . . . [Rule 403], such as the danger of confusion of the issues or misleading the jury, or by considerations of undue delay." *Id.* Commenting on the risks inherent to speculative evidence, the Tenth Circuit Court of Appeals observed:

> Although there is no doubt that a defendant has a right to attempt to establish his innocence by showing that someone else did the crime, a defendant still must show that his proffered evidence on the alleged alternative perpetrator is *sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the asserted "alternative perpetrator."* It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime. Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice.

*United States v. Jordan*, 485 F.3d 1214, 1219 (10th Cir. 2007) (quoting *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998)) (emphasis in original).

26

In *Holmes v. South Carolina*, 547 U.S. 319 (2006), the Supreme Court of the United States explained that "[w]hile the [United States] Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* at 326 (citations omitted). As an example of this principle, the *Holmes* Court discussed the exclusion of speculative evidence offered by a criminal defendant seeking to show that someone else was the perpetrator.

> A specific application of this principle is found in rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged. See, *e.g.*, 41 C.J.S., Homicide § 216, pp. 56-58 (1991) ("Evidence tending to show the commission by another person of the crime charged may be introduced by accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded"); 40A Am. Jur. 2d, Homicide § 286, pp. 136-138 (1999) ("[T]he accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged . . . . [Such evidence] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial" (footnotes omitted)). Such rules are widely accepted[.]

*Holmes*, 547 U.S. at 327.

27

Turning to the facts of this case, we find no error in the circuit court's exclusion of the petitioner's proffered 404(b) evidence about the victim. A review of the record reveals the circuit court fully complied with *McGinnis* in making its ruling. The circuit court correctly concluded that the petitioner did not present evidence to prove the victim was either a drug dealer or the seller of illegal firearms and firearms equipment. At most, during the pre-trial hearings the petitioner established the victim was a drug *user* who discussed a handgun and silencer with a friend during an exchange of text messages.

More importantly, even if the circuit court had found sufficient evidence to prove the victim was a drug dealer and/or gun seller (or, contrary to *McGinnis*, had simply accepted the petitioner's unsupported proffer), the evidence was still properly excluded pursuant to Rules 401 and 403. The petitioner's theory was premised entirely upon speculation. There is no evidence in the appendix record to suggest the victim was killed during, or because of, a drug or gun transaction. There is nothing to connect this homicide to the proffered prior bad acts. Allowing the jury to hear about irrelevant, collateral conduct of this nature, even if true, would have been confusing to the jury and wasteful of judicial time and resources.

Finally, although most of the petitioner's arguments concern his request that we adopt a different policy regarding the procedures for admission of reverse Rule 404(b)

28

evidence, he also makes generalized constitutional arguments about the Rule 404(b) issue. He suggests that his due process right to defend himself was overburdened because the trial court would not merely accept his pre-trial proffer regarding the victim's prior bad acts. He also implies that his rights were infringed because, as the sole person claiming that Jason Pratz was a drug dealer, he had to decide whether to testify in the pre-trial hearing to support the 404(b) proffer.[23] We are not convinced. The Supreme Court explained that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes*, 547 U.S. at 326. As we have already concluded, this purely speculative evidence, even if true, was properly excluded under Rules 401 and 403. The following discussion by the United States Court of Appeals for the Sixth Circuit is instructive:

> The [United States] Constitution guarantees "a meaningful opportunity to present a complete defense," *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (quotation marks omitted), but "not an unlimited right to ride roughshod over reasonable evidentiary restrictions," *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir.2003) (en banc). A defendant must "comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v.*

---

[23]Although the circuit court advised that any pre-trial testimony and cross-examination would be limited solely to this issue, the petitioner elected not to testify in the *McGinnis* hearing. West Virginia Rule of Evidence 104(d) directs that "[b]y testifying on a preliminary question, a defendant in a criminal case does not become subject to cross-examination on other issues in the case." *See supra* note 18.

*Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973).  The right to present a complete defense–including the third-party culpability defense raised here–thus does not mean that a defendant may introduce whatever evidence he wishes, only that any state-law evidentiary restrictions cannot be "arbitrary" or "disproportionate to the purposes they are designed to serve."  *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (quotation marks omitted).

*Wynne v. Renico*, 606 F.3d 867, 870 (6th Cir. 2010).  For all of the foregoing reasons, we find no error in the circuit court's exclusion of evidence regarding the victim's alleged prior bad acts.

## C.  Sufficiency of the Evidence

Although the petitioner concedes there was sufficient evidence at trial from which the jury could have found that he murdered Jason Pratz, he argues the State failed to prove the murder was premeditated.[24]  Premeditation is an essential element of intentional first degree murder and must be proven beyond a reasonable doubt.[25]  The petitioner asserts that without sufficient proof of premeditation, this Court must reduce his conviction to

[24]The petitioner continues to maintain his innocence to the homicide, but admits there was evidence presented at trial from which the jury could find all of the elements of murder except premeditation.

[25]To establish first degree murder, the State was required to prove beyond a reasonable doubt that the petitioner committed the willful, deliberate and premeditated killing of Jason Pratz.  *See* W.Va. Code § 61-2-1*; State v. Greenfield*, 237 W.Va. 773, 786, 791 S.E.2d 403, 416 (2016) (reciting elements of first degree murder); *State v. Browning*, 199 W.Va. 417, 420, 485 S.E.2d 1, 4 (1997) (same); *State v. Guthrie*, 194 W.Va. 657, 676, 461 S.E.2d 163, 182 (1995) (discussing first degree murder jury instruction).

30

second degree murder.[26]   The State responds that the conviction of first degree murder is fully supported by the evidence.

When reviewing a claim of insufficiency of the evidence, this Court reviews the evidence admitted at trial and accepts all inferences from a vantage most favorable to the prosecution.

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).  This review takes into account all of the evidence, including circumstantial evidence.  "Circumstantial evidence . . . is intrinsically no different from testimonial evidence."  *Id.* at 668, 461 S.E.2d at 174 (quoting *Holland v. United States*, 348 U.S. 121, 139-40 (1954)).  "Circumstantial evidence and direct evidence inherently possess the same probative value."  *Guthrie*, 194 W.Va. at 669, 461 S.E.2d at 175 (quoting *State v. Jenks*, 574 N.E.2d 492, 502 (Ohio 1991)).  A

---

[26]A murder that does not present all of the essential elements of first degree murder constitutes second degree murder. *See* W.Va. Code § 61-2-1, in part ("All other murder is murder of the second degree").  The jury at the petitioner's trial was instructed on the elements of both first degree murder and second degree murder.

criminal defendant challenging the sufficiency of the evidence on appeal has a heavy burden; he or she must prove there is *no* evidence from which the jury could find guilt beyond a reasonable doubt.

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

*Guthrie*, 194 W.Va. at 663, 461 S.E.2d at 169, syl. pt. 3.[27]


As explained in *Guthrie*, "premeditated" killing means that a killing is committed after the passage of some amount of time allowing the perpetrator to be conscious of the intent to kill; this period of time cannot be arbitrarily fixed and will vary according to the person and circumstances:

---

[27]As part of his argument, the petitioner contends that syllabus point three of *Guthrie* is too lax and is inconsistent with the standard cited by the Supreme Court of the United States in *Jackson v. Virginia*, 443 U.S. 307 (1979). For the reasons set forth in *State v. Boyd*, __ W.Va. __, __ n.12, 796 S.E.2d 207, 216 n.12 (2017), we summarily reject this claim.

5. Although premeditation and deliberation are not measured by any particular period of time, there must be some period between the formation of the intent to kill and the actual killing, which indicates the killing is by prior calculation and design. This means there must be an opportunity for some reflection on the intention to kill after it is formed.

6. In criminal cases where the State seeks a conviction of first degree murder based on premeditation and deliberation, a trial court should instruct the jury that murder in the first degree consists of an intentional, deliberate, and premeditated killing which means that the killing is done after a period of time for prior consideration. The duration of that period cannot be arbitrarily fixed. The time in which to form a deliberate and premeditated design varies as the minds and temperaments of people differ and according to the circumstances in which they may be placed. *Any interval of time between the forming of the intent to kill and the execution of that intent, which is of sufficient duration for the accused to be fully conscious of what he intended, is sufficient to support a conviction for first degree murder.* To the extent that *State v. Schrader*, 172 W.Va. 1, 302 S.E.2d 70 (1982), is inconsistent with our holding today, it is expressly overruled.

*Id.* at 664, 461 S.E.2d at 170, syl. pts. 5 and 6 (emphasis added). Moreover,

"[a] jury must consider the circumstances in which the killing occurred to determine whether it fits into the first degree category. Relevant factors include the relationship of the accused and the victim and its condition at the time of the homicide; whether plan or preparation existed either in terms of the type of weapon utilized or the place where the killing occurred; and the presence of a reason or motive to deliberately take life. No factor is controlling. Any one or all taken together may indicate actual reflection on the decision to kill. This is what our statute means by 'willful, deliberate and premeditated killing.'" *State v. Guthrie*, 194 W.Va. 657, 675 [n.23], 461 S.E.2d 163, 181 n.23 (1995).

*State v. Browning*, 199 W.Va. 417, 421, 485 S.E.2d 1, 5 (1997).

33

In the case *sub judice*, the State's assertion of premeditation is supported by evidence that the petitioner possessed a handgun when he drove to the victim's home. There was circumstantial evidence that the gun was hidden in his backpack, which is where a witness saw him place it three days earlier. Furthermore, instead of parking his car in front of the victim's house, the evidence showed that the petitioner parked at the bottom of a hill and around a corner.[28] A reasonable jury could infer that this was to screen the sight of his car from onlookers so he could approach the victim's home unnoticed. The evidence further suggests that the petitioner then walked up the hill to Jason Pratz's home, entered the home, and removed his gun. The scene of the crime showed no signs of a struggle, which one might expect if the killing had resulted from an argument or other heat-of-the-moment situation. Finally, the victim, who was unarmed, was shot not just once, but a total of three times, and the trail of the victim's blood evidenced his attempt to flee from the shooter. The jury reasonably could have determined that the time it took to accomplish any of these steps provided the petitioner with a sufficient opportunity for reflection on his intent to kill. *See Guthrie*, 194 W.Va. at 664, 461 S.E.2d at 170, syl. pt. 5.

In support of this assignment of error, the petitioner argues the State failed to provide any motive for his killing of Jason Pratz. However, this does not control our inquiry.

---

[28]During a jury view, the jurors personally visited the victim's street, observed the available options for parking, and observed the location where the silver Subaru was parked.

Motive may be an indicator of premeditation,[29] but it is not an essential element of first degree murder and need not be proven in order to sustain a conviction. Rather, the jury's duty is to consider all of the evidence presented and to apply that evidence to the charged offenses.

Considering all of the evidence in a light most favorable to the State, we conclude there was sufficient evidence for the jury to find beyond a reasonable doubt that the petitioner formed the intent to kill and had a sufficient interval of time to be fully conscious of what he intended. *See id.* The jury was properly instructed on the crimes of first and second degree murder and, after hearing all of the evidence, found the petitioner guilty of first degree murder.[30] This Court has no basis upon which to second-guess the jury's verdict.

### III.  Conclusion

For the foregoing reasons, the petitioner's conviction is affirmed.

Affirmed.

---

[29]*See Guthrie*, 194 W.Va. at 675 n.23, 461 S.E.2d at 181 n.23.

[30]The circuit court instructed, inter alia, that "it is the absence of premeditation and deliberation that distinguishes murder in the second degree from murder in the first degree[,]" and that second degree murder is an unlawful, willful, intentional, and malicious killing "without deliberation or premeditation."