**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0222** (Jackson County CC-18-2016-F-91)

**Benjamin R. Taylor,**
**Defendant Below, Petitioner**

### MEMORANDUM DECISION

Petitioner Benjamin R. Taylor appeals the order of the Circuit Court of Jackson County, entered on February 12, 2020, resentencing him to reset the timeframe for direct appeal.[1] We determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. Proc. 21.

Mr. Taylor is serving a sentence of imprisonment for life, without mercy, for his conviction of first-degree murder; a consecutive sentence of forty years for his conviction of death of a child by child abuse; and a consecutive sentence of ten to twenty years for his conviction of sexual abuse by a guardian, custodian, or person in a position of trust. These convictions followed Mr. Taylor's arrest, indictment, and jury trial for the death of the ten-month-old daughter of his girlfriend, who discovered Mr. Taylor with the child's naked body in the basement of her home just before 5 a.m. one morning in October of 2016. The child's mother took the child from Mr. Taylor and called 9-1-1. Paramedics took the child to a nearby hospital where staff identified injuries that included skull fractures; deep scalp hemorrhages; evidence of smothering; a perineal tear; anal tears; and blunt force trauma to the neck, head, chest, abdomen, buttocks, pelvis, and extremities. The child died two days later.

According to Mr. Taylor's own trial testimony, he suffered a lengthy "blackout" beginning several hours before he was found with the child, after a day spent drinking beer and smoking marijuana. Though he had visitors earlier in the evening, he acknowledged that the guests left his girlfriend's home after a brief stay. Soon after, at approximately 9:30 p.m., Mr. Taylor's girlfriend and her older children went to their bedrooms in the upstairs part of the home. Mr. Taylor went to the basement, alone, to do laundry and he continued to drink beer.[2] He testified that he does not

---

[1] Mr. Taylor appears by counsel Timothy P. Rosinsky. Respondent State of West Virginia appears by counsel Patrick Morrisey and Andrea Nease Proper.

[2] Mr. Taylor's girlfriend testified that the child was in a crib in a room in an upper floor of the home when she went to bed.

remember anything after blacking out but acknowledged that he used his mobile phone throughout the night. He further acknowledged that he used his phone to view pornography a little more than an hour before his girlfriend found him. He further testified that he "woke up" in the basement for thirty to forty-five seconds in the early morning and saw the child "gurgling" in front of him, prompting him to administer the child two breaths in CPR fashion. Finally, he testified,

> And at that point, [the child's mother] is like close to me or coming down the stairs. I can't really remember. And I pulled the blanket back. And I see blood. And I just jumped up. And I tell [the child's mother] I didn't molest her.

When the deputy sheriff arrived, he found the basement door leading outside the home locked. Only Mr. Taylor's girlfriend had a key to that door.

On appeal, Mr. Taylor assigns error to the circuit court's treatment of three pretrial issues. No assignment of error attacks the foundation or reliability of the testimony that is summarized above. In reviewing the assignments of error before us, we are mindful that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). We note additional standards below where applicable.

1.

We begin with Mr. Taylor's first assignment of error, in which he argues that the circuit court erred in denying his motion for a change of venue on the ground that the child's death and his indictment were so widely known that he could not have a fair trial in Jackson County. We review the circuit court's denial for a clear abuse of discretion. Syl. Pt. 1, *State v. Zuccaro*, 239 W. Va. 128, 799 S.E.2d 559 (2017). In doing so, we consider whether petitioner demonstrated "good cause" for a change of venue at the time he made his application. Syl. Pt. 1, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994). We agree with Mr. Taylor that the shocking nature of the crimes with which he was charged and the circumstances surrounding these crimes were likely to draw a great deal of attention in a community. Mr. Taylor, however, heavily relies on his conjecture and fails to present evidence of actual prejudicial notoriety surrounding his trial. In his best effort to support his claim, Mr. Taylor invites us to peruse for ourselves approximately 1800 pages of juror questionnaires to draw the conclusion that public sentiment disfavored him.[3] But he stops short of

---

[3] A citation to nearly two-thousand pages of the appendix record on appeal is, of course, an egregious affront to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which requires that

> [t]he brief must contain an argument clearly exhibiting the points of fact and law presented, the standard of review applicable, and citing the authorities relied on ... [and] must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Intermediate Court and the

(continued. . .)

2

identifying specific evidence of bias to establish that there was good cause necessitating a change of venue. And we find none. Rather, the record shows that the circuit court took great care in addressing media coverage, limiting demonstrations at the courthouse, ordering that discovery be kept under seal, encouraging extensive voir dire, and broadening voir dire through the use of jury questionnaires. In view of the facts presented to us, we find no error in the circuit court's denial of petitioner's motion for a change of venue.

2.

In the second assignment of error, Mr. Taylor argues that the circuit court erred in excluding evidence of a potential alternative suspect. Mr. Taylor informed the State that he intended to offer evidence that another male was near his girlfriend's home on the morning the child was attacked. The State filed a motion to suppress this evidence, and the circuit court appropriately conducted a hearing to assess the proffered evidence under our precedent:

> In a criminal case, the admissibility of testimony implicating another person as having committed the crime hinges on a determination of whether the testimony tends to directly link such person to the crime, or whether it is instead purely speculative. Consequently, where the testimony is merely that another person had a motive or opportunity or prior record of criminal behavior, the inference is too slight to be probative, and the evidence is therefore inadmissible. Where, on the other hand, the testimony provides a direct link to someone other than the defendant, its exclusion constitutes reversible error.

Syl. Pt. 1, *State v. Harman*, 165 W. Va. 494, 270 S.E.2d 146 (1980).

Mr. Taylor offered three witnesses in support of his proffer. One testified, and another offered a recorded statement, that he or she saw a man identified as "M.S." near Mr. Taylor's girlfriend's home within the hour or two prior to the girlfriend's discovery of the attack. M.S.'s girlfriend testified that she and M.S. were together in bed until 5:25 a.m.—more than a half-hour after Mr. Taylor's girlfriend called 9-1-1—that morning. The third witness testified that, several months after the attack, Mr. Taylor's girlfriend told her that a "neighbor guy" had been in the home the night before the child was killed. Mr. Taylor testified that the couple entertained visitors earlier in the evening, and his own testimony belies the possibility that another person was in the basement with him at any point after 9:30 p.m. We agree with the circuit court that each of these witness statements was too slight to be probative and too speculative to establish a direct link between M.S.—or anyone other than Mr. Taylor—to the crime. We find, therefore, that the circuit court did not abuse its discretion in granting the State's motion to suppress this testimony.

3.

Supreme Court may disregard errors that are not adequately supported by specific references to the record on appeal.

3

We turn to Mr. Taylor's third and final assignment of error. Here, he argues that the circuit court "erred in its pretrial ruling regarding the testimony by DNA experts." This dispute began with petitioner's filing of a motion to suppress and enjoin, in which he sought to exclude sixteen DNA samples based on their failure to meet the "stochastic threshold," a base established by analysts to establish that no dropout allele renders a sample unreliable.[4] Soon after, the State filed its own motion to suppress DNA evidence obtained from a swab of the victim's vaginal area ("the vaginal swab").

At the motions hearing, the parties presented an agreed order resolving, through exclusion, all DNA issues except for the one raised in the State's motion concerning the vaginal swab sample. The State's forensic analyst testified that she used a test kit designed to isolate male DNA from mixed samples, but such testing could return low-level DNA extract. The vaginal swab did, in fact, yield a low level of DNA, and the analyst was thus required, under the West Virginia State Police Crime Laboratory's procedures, to perform two amplifications yielding eight concordant loci to establish reliability. Though the first amplification (which tended to exclude Mr. Taylor as a DNA contributor) showed ten results at nine locations, the second amplification showed only three results. Because the results did not meet the requirement that the two amplifications produce eight concordant results, the State's forensic analyst concluded that the results were not reliable and Mr. Taylor could not be excluded as a DNA contributor to the vaginal swab sample. Mr. Taylor's expert witness testified, on the other hand, that the analyst's first amplification was itself reliable because the stochastic threshold applied at only one locus point, and enough loci meeting the threshold remained to consider the sample reliable. Therefore, he opined, it was not necessary to replicate the results in a second amplification. The State's motion would effectively preclude Mr. Taylor from introducing evidence of the first amplification which, standing alone, suggested that Mr. Taylor was not a DNA contributor to the vaginal swab sample.

Upon receiving the testimony at the motions hearing, the circuit court determined that neither the State nor Mr. Taylor "offer[ed] any persuasive supporting evidence of their expert's position related to the importance of the DNA sample meeting the stochastic threshold." It denied the State's motion to suppress the evidence but qualified that "in the event such evidence is introduced, the State *may motion* the [c]ourt to be permitted to introduce evidence of the previously agreed-to suppressed results of testing samples which were below the stochastic threshold, as raised in" Mr. Taylor's earlier motion to suppress. (*Emphasis supplied*.) Mr. Taylor argues that the circuit court's ruling placed him in a "Catch-22" situation that ultimately led him to forego the presentation of his own expert's testimony that the first amplification excluded him as a contributor.

Mr. Taylor's argument is problematic in that it attacks the circuit court's order *permitting* the very testimony that he planned to introduce. The court's ruling was in no way adverse to Mr. Taylor. He essentially asks that we reverse his conviction because the circuit court entered an order compelling him to make a decision about his presentation of evidence. Mr. Taylor offers no authority supporting the position that the circuit court exceeded its authority in suggesting that it

---

[4] Alleles are alternative forms of genes that may occur at a given genomic location. When not accounting for the stochastic threshold to address the possibility of allele dropout, at least some of these samples tend to connect Mr. Taylor's DNA to the attack on the child.

would entertain a future motion under specific circumstances. We, therefore, find that the circuit court did not abuse its discretion in denying the State's motion to suppress or in the phrasing that the court employed in denying the motion.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 18, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn